ROMMERDAHL, Appellant, vs. JACKSON and others, Respondents.

*February 24— March 14, 1899.*

*Partnership: Certificates of stock: Assignment: Chattel mortgages: Garnishment: Election between remedies: Accounting.*

1. Where partners have by agreement used certificates of stock to indicate the proportionate interest of each in the firm, a transferee of such certificates does not become a member of the firm, in the absence of an agreement to that effect, but obtains merely the right to demand an accounting and to receive the proportionate share of the net firm property after such accounting.

2. A transfer, as collateral security, of certificates of stock used by partners to indicate the proportionate interest of each in the firm is not a chattel mortgage within the meaning of sec. 2313, Stats. 1898, providing for the filing of such mortgages. That statute ap-

plies only where the mortgaged property is capable of manual delivery.

3. A partner whose interest in the firm was indicated by certificates of stock assigned such certificates, either absolutely or as collateral security, to various persons. Afterwards, by bill of sale, he transferred his apparent interest in the partnership to an innocent purchaser, promising to deliver the certificates in a few days, the consideration to be paid on their delivery; and the purchaser took possession of the seller's interest. Before the consideration was paid a creditor of the seller garnished the purchaser, and she brought the agreed price into court. The assignees of the certificates were interpleaded, and each answered claiming a share of said fund. *Held*, that this constituted a ratification by said assignees of the transfer to the garnishee, and an election to consider the money as standing in place of their interests or rights in the firm assets. The rights of all parties might therefore be properly adjusted in the garnishment action without an accounting.

APPEAL from a judgment of the circuit court for Kenosha county: FRANK M. FISH, Circuit Judge. *Affirmed.*

The plaintiff sued Urban J. Lewis, September 16, 1895, and recovered judgment for over $5,000. At the time of the commencement of the suit, garnishee process was served upon Eda Meinhardt, who immediately made answer, and brought into court moneys and securities amounting to $6,000, and an order was made interpleading the defendants *Jackson* and others as claimants of parts of said fund so brought into court. The interpleaded defendants made their answers, each claiming a part of said fund, and the action was tried by the court. The facts were practically undisputed, and were as follows:

About May 1, 1894, Eda Meinhardt, the garnishee, who was then cashier of a bank at Burlington, Wisconsin, and the defendant Urban J. Lewis, who was then cashier of the bank of Dan Head & Co., at Kenosha, Wisconsin, together with two other capitalists, entered into a partnership, with the purpose of doing a banking business at Antioch, Lake County, Illinois; the organization of the enterprise being princi-

pally intrusted to the defendant Lewis. Lewis contributed $6,000 to the capital stock, which was $12,000 in all, and caused to be issued certificates of stock, which on their face purported to be stock certificates in a corporation of the par value of $100 per share, and had an assignment in blank upon the back. The other partners acquiesced in the issuance of these certificates, but the uncontradicted evidence is that it was understood between the members of the firm that they were not transferable. In August, 1895, the bank of Dan Head & Co. and Urban J. Lewis personally were financially embarrassed, and the garnishee defendant, Eda Meinhardt, went to Kenosha, August 26, 1895, for the purpose of buying Lewis's interest in the Bank of Antioch, and did on that day purchase his apparent interest in the bank for $6,000, and obtained a bill of sale therefor. Lewis informed the garnishee that he could not deliver the certificates of stock at that time; so it was arranged that the consideration should be paid by the garnishee later, on the receipt of the certificates of stock, which Lewis promised to send to her.

The garnishee testifies that she had no knowledge that Lewis had transferred any of his stock at that time, and there is no testimony to the contrary of this fact. The consideration of $6,000 was to be paid by delivering a note of the bank of Dan Head & Co. for $2,000, an opera-house bond for $500, and the balance of $3,500 in cash on receipt of the certificates of stock. None of Lewis's copartners had knowledge of his transfer of the certificates of stock. On securing a bill of sale the garnishee took immediate possession and control of Lewis's interest in the partnership, and still has such possession. Before paying any of the consideration money, the garnishee summons in this action was served upon her, and she paid into court $3,500, and also delivered the bond and note referred to in the bill of sale.

The interpleaded defendant *Jackson* holds certificates,

Rommerdahl vs. Jackson and others.

issued to Lewis and assigned to him, amounting to $1,500, for which he had given that amount of cash to Lewis to invest in the Bank of Antioch. The defendant *Emilie M. Holt* holds nine shares of said so-called stock as collateral security for the payment of $875 due her from the bank of Dan Head & Co. The defendant *A. A. Pribnow* holds five shares of said stock as collateral security for $500 loaned by him to Lewis. The defendant *George Hale*, as assignee of Dan Head & Co., holds thirteen shares of said stock as collateral security for a loan of that amount by said Dan Head & Co. to Lewis. The defendant *John Clauson* holds two shares of said stock as collateral security for a debt due him from the bank of Dan Head & Co.

Upon these facts the circuit court ordered that the various interpleaded defendants be first paid, out of the moneys deposited in court by the garnishee, the amounts due them respectively, amounting in all to $4,400 with costs, before any payment be made out of said funds to the plaintiff; and from this judgment the plaintiff appeals.

For the appellant there were briefs by *Palmer & Gittings*, and oral argument by *W. C. Palmer*.

For the respondent *Jackson* there was a brief by *Lloyd & McDowell;* for other respondents a brief by *Cavanagh & Fisher;* and the cause was argued orally by *Peter Fisher* and *G. R. McDowell*.

WINSLOW, J. The so-called Bank of Antioch was a partnership, and not a corporation, and hence the certificates of stock which were issued were not in fact certificates of corporate stock in any true legal sense; but nevertheless there was nothing to prevent the partners, if they so agreed, from using such certificates to indicate the proportionate interests of each partner in the firm. *Durkee v. Stringham*, 8 Wis. 1. It is well understood that a partner may sell or mortgage his interest without consulting his copartners, but that the assignee does not become a partner thereby, but acquires

only a right to receive, upon settlement of the partnership business, that sum which would have been due to his assignor or mortgagor. 1 Lindley, Partnership (2d Am. ed.), 363 *et seq.* In the absence of an agreement to that effect, the assignee of a partner's share does not become a member of the firm nor the owner of any of the firm property, "but he comes into nothing more than an interest in the partnership, which cannot be tangible, cannot be made available, or be delivered, but under an account between the partnership and the partner, and it is an item in the account that enough must be left for the partnership debts." *Bank v. Carrollton Railroad*, 11 Wall. 624.

In the present case the undisputed testimony is that the original parties to the partnership agreed that the certificates of stock should not be transferable.

Thus the assignees of Lewis, who received the certificates of stock either by way of purchase or as collateral to an indebtedness, became entitled thereby to a mere right to demand an accounting and to receive their proportionate shares of the net firm property after such accounting. This intangible right, however, they did become entitled to, as against the remaining partners, unless, indeed, there is ground for holding that such transfers, which were made by way of collateral security for debts, amounted to chattel mortgages, and hence were void as to third persons because not filed in the office required by law. This claim, however, is not tenable. The chattel mortgage statute refers only to personal property capable of delivery, as its words clearly indicate, and not to a defeasible assignment of a mere right or chose in action. This principle is well settled. Jones, Chattel Mortgages (4th ed.), § 278, and authorities cited. As said in the quotation from the United States supreme court hereinbefore contained, the right which these assignees obtained is one which cannot "be tangible, cannot be made available, or be delivered." It has been held that assignments, by way of security for debt, of mere rights or choses

Rommerdahl vs. Jackson and others.

in action, such as rights under a lease, or an insurance policy, or certificates of corporate stock, or a legacy, or a judgment, or an open account, are chattel mortgages in effect, but are not the chattel mortgages which are covered by the registry statutes, because these statutes only apply where the mortgaged property is capable of manual delivery.   Stats. 1898, sec. 2313; *Lawrence v. McKenzie,* 88 Iowa, 432, and cases cited in opinion.

The inevitable conclusion is that the transfers made by Lewis of his certificates of stock to the various interpleaded defendants, whether absolute or as collateral security, gave to each assignee the equitable right above defined, and that such transfers were good, even as against attaching creditors of Lewis, though not recorded as chattel mortgages. The money representing Mr. Lewis's original half interest in the banking firm having been deposited in court by the garnishee, and the assignees having all been brought into court and answered, claiming shares in the fund, and the plaintiff, the only other adverse claimant to the fund, being also in court and claiming the fund, no reason is perceived why the rights of all parties should not be finally settled as they were by the trial court.   There is no need of an accounting, because all parties have, by claiming their interests in the fund in court, in effect ratified the transaction by which the value of the Lewis interest in the firm has been liquidated and turned into cash.

The garnishee says, in substance: "I bought the Lewis interest in the firm out, and agreed to pay $6,000 for it; and I now pay this money into court." The various claimants under Lewis come into court, and make their various claims to this money; thus beyond doubt ratifying the transfer to the garnishee, and electing to consider the money as standing in place of any interest or right in the firm assets.

*By the Court.*— Judgment affirmed.

MARSHALL, J., dissents.