UNITED STATES v. NORTHERN PAC. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1905.)

No. 1,961.

1. JURISDICTION OF FEDERAL COURTS—SUITS BY UNITED STATES.

Where a statute making provision for suits by the United States does not designate the tribunal in which they shall be instituted, when brought in a federal court, they fall within the general grant of jurisdiction found in Judiciary Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], and are subject to the limitations therein expressed.

2. SAME—DISTRICT OF SUIT—CORPORATIONS.

For jurisdictional purposes, under Judiciary Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], a corporation is an "inhabitant" only of the state under which it was incorporated, and is not suable elsewhere without its consent.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 814, 860.]

3. EQUITY—NECESSARY PARTIES.

To a suit by the United States in a Circuit Court in which the annulment of a contract between corporations is sought as a necessary incident to other relief prayed for, all the corporations which are parties to such contract and whose interests will be substantially affected by its cancellation are indispensable parties; and the court cannot proceed to try the case on the merits where it is without jurisdiction of one of such corporations.

Appeal from the Circuit·Court of the United States for the District of Minnesota.

For opinion below, see 120 Fed. 546.

On July 21, 1890, the United States of America filed its· bill of complaint in the Circuit Court of the United States for the District of Minnesota against the Northern Pacific Railroad Company, the Northwestern Telegraph Company, and the Western Union Telegraph Company, the averments of which were substantially as follows: The Northern Pacific Railroad Company was incorporated by an act of Congress approved July 2, 1864 (13 Stat. 365, c. 217), for the purpose of building and maintaining a continuous railroad and telegraph line from a point on Lake Superior in Minnesota or Wisconsin to Puget Sound and Portland in the state of Oregon. A subsidy in lands and also a right of way through the public domain were granted to it by the act as an aid to the construction of the railroad and telegraph lines. The act required, among other things, the construction of "a telegraph line of the most substantial and approved description, to be operated along the entire line." The better to accomplish the object of the act, which was declared to be the promotion of the public interest and welfare, by the construction of the railroad and telegraph line and keeping the same in working order, power was reserved by Congress to add to, alter, amend, or repeal the same at any time. Pursuant to this reservation of power Congress passed an act which was approved August 7, 1888, 25 Stat. 382, c. 772 [U. S. Comp. St. 1901, p. 3582]. The first and fourth sections of this act are as follows:

"That all railroad and telegraph companies to which the United States has granted any subsidy in lands or bonds, or loan of credit for the construction of either railroad or telegraph lines, which, by the acts incorporating them, or by any act amendatory or supplementary thereto, are required to construct, maintain, or operate telegraph lines, and all companies engaged in operating said railroad or telegraph lines shall forthwith and henceforward, by and through their own respective corporate officers and employees, maintain, and operate, for railroad, governmental, commercial, and all other purposes, telegraph lines, and exercise by themselves alone all the telegraph franchises conferred upon them and obligations assumed by them under the acts making the grants as aforesaid."

"That in order to secure and preserve to the United States the full value and benefit of its liens upon all the telegraph lines required to be constructed by and lawfully belonging to said railroad and telegraph companies referred to in the first section of this act, and to have the same possessed, used, and operated in conformity with the provisions of this act and of the several acts to which this act is supplementary, it is hereby made the duty of the Attorney General of the United States, by proper proceedings, to prevent any unlawful interference with the rights and equities of the United States under this act, and under the acts hereinbefore mentioned, and under all acts of Congress relating to such railroads and telegraph lines, and to have legally ascertained and finally adjudicated all alleged rights of all persons and corporations whatever claiming in any manner any control or interest of any kind in any telegraph lines or property, or exclusive rights of way upon the lands of said railroad companies, or any of them, and to have all contracts and provisions of contracts set aside and annulled which have been unlawfully and beyond their powers entered into by said railroad or telegraph companies, or any of them, with any other person, company, or corporation."

The railroad company completed its railroad in 1883. At the time the bill was filed it was engaged in operating about 2,200 miles of railroad, had received and was in the enjoyment of the lands and right of way granted to it, but had wholly ceased to maintain or operate any line of telegraph. On May 1, 1880, a contract was entered into between the Northwestern Telegraph Company and the Western Union Telegraph Company and the railroad company which recited that under a prior contract between them the telegraph companies had constructed the telegraph lines along the railroads of the railroad company and that they were jointly and equally owned by the contracting parties. The truthfulness of this recital in the contract was challenged by the government. It was claimed that on the contrary the railroad company had

built its own lines of telegraph as it was required to do by the act of its incorporation, but, if it should be discovered that such recital was true, then that the arrangement so entered into was beyond the corporate powers of the railroad company, was a gross breach of public trust, and should be relieved against in that suit. The terms of the contract of May 1, 1880, which were then being observed by the parties, effected an abandonment by the railroad company of the exercise of the telegraph franchises conferred upon it by the act of July 2, 1864. The telegraph companies claimed to be the owners of a large part of the telegraph properties and instrumentalities, and had in fact unlawfully supplanted the railroad company, with its consent, in the conduct of the public and commercial telegraph business. The railroad company, notwithstanding the requirements of the acts of Congress and its obligations to the government and to the public, persisted in protecting the telegraph companies in the possession and enjoyment of the monopoly of such business which was reserved to them by the contract. Since the passage of the act of August 7, 1888, which particularized the duties imposed upon the railroad company, it had not abrogated or annulled the unlawful contract entered into with the telegraph companies, but continued to disregard the commands of that act. The Western Union Telegraph Company was organized as a corporation under a statute of the state of New York, and it claimed to have succeeded by purchase or lease to all of the rights and franchises of its codefendant the Northwestern Telegraph Company. The legality of the incorporation of the Western Union Telegraph Company was challenged, as was also its power to acquire the rights and franchises of its said codefendant. The prayer of the bill was, in substance, that the contracts between the railroad company and the telegraph companies be set aside, annulled and canceled; that the court, by proper order and under certain penalties to be prescribed, direct the railroad company to thenceforth and through its own corporate officers and employés maintain and operate telegraph lines along its entire main line and branches for all purposes, and exercise by itself alone all the telegraph franchises conferred upon it; and that the rights of the government, the defendants, and all other persons and corporations claiming any control or interest of any kind in the telegraph lines or property on or along the railroad, or exclusive rights of way, be legally ascertained and finally adjudicated.

On July 13, 1900, the Northern Pacific Railway Company which, through foreclosure proceedings, had theretofore succeeded to the property and franchises of the railroad company, was made a party defendant. Thereafter an amended and supplemental bill was filed by the government, which, after reciting and reaverring the substance of its original pleading, set forth the following facts: In its acquisition of the property and franchises of the railroad company the duties and obligations imposed upon the latter by the various acts of Congress devolved upon the railway company, and it became chargeable with the performance thereof. Although the contract with the telegraph companies of May 1, 1880, had expired by limitation and notice, and was no longer binding as a written contract, nevertheless the railway company and the telegraph companies were still operating thereunder in all respects as had the original contracting parties. The railway company had surrendered its telegraph franchises and business to the telegraph companies and had given them the complete exercise and control thereof. The prayer for relief was similar to that of the original bill. Among other things the complainant prayed that the contracts and arrangements between the railway company and the telegraph companies for the operation of the telegraph lines along the railroad right of way be declared void, set aside, annulled, and canceled.

After the filing of the original bill the Western Union Telegraph Company tendered its plea to the jurisdiction of the court, claiming that as it was a corporation of the state of New York, and therefore an inhabitant of that state, suit could not be maintained against it in the District of Minnesota without its consent. The plea was overruled. The company, through counsel appearing for it, had previously submitted itself to the jurisdiction of the court; but it was allowed to withdraw its general appearance and the pleadings filed in its name. The reasons for this action do not appear, but the record does not show that any objection was then made thereto, nor is any made in this court. It should, therefore, be presumed that there was sufficient cause,

and that it was shown to the satisfaction of both the Circuit Court and counsel for complainant. After the overruling of the plea the issues were joined and the testimony taken. Upon final hearing the Circuit Court dismissed complainant's bill upon the merits. From the decree this appeal is prosecuted.

Charles C. Houpt, for appellant.

C. W. Bunn, for appellee railroad companies.

Rush Taggart, for appellee telegraph companies.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There is no act of Congress specially applicable to suits such as the one now under review, which designates the tribunal in which they shall be instituted. The case, therefore, falls within the general grant of jurisdiction to the Circuit Courts found in Judiciary Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], and is subject to the limitations therein expressed. It is provided in that section that:

"No civil suit shall be brought * * * against any person by any original process or proceeding in any other district than that whereof he is an inhabitant."

The exception to this provision in respect of suits between citizens of different states does not apply to suits in which the United States is plaintiff or petitioner. The contention of the Western Union, which was asserted in the Circuit Court and is still asserted here, is that, being a corporation organized under the laws of New York, it is an inhabitant of that state, and is not suable in the District of Minnesota without its consent. The fact that a corporation does business in a state other than that of its incorporation does not make it an inhabitant of that state for purposes of jurisdiction. It remains an inhabitant of the state under the laws of which it was organized. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Southern Pacific v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942; In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211; In re Keasbey & Mattison Company, 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402; Rust v. Waterworks Co., 70 Fed. 129, 17 C. C. A. 16; Ellsworth Trust Co. v. Parramore, 108 Fed. 906, 48 C. C. A. 132. In United States v. Southern Pacific et al. (C. C.) 49 Fed. 297, which was a case very similar to the one at bar, a contrary view was announced. The pleas and motions of the Southern Pacific, a Kentucky corporation, and the Western Union, a New York corporation, were overruled; it being held that they were inhabitants of the state of California where the suit was instituted. But the doctrine which we have applied is now firmly established. It follows, therefore, that the plea of the Western Union should have been sustained, it should have been dismissed from the suit, and all proceedings thereafter should have been as though it were no longer a party defendant.

In this view of the situation, considering that the plea was sustained, as it should have been, had the Circuit Court, sitting as a court of equity,

jurisdiction to proceed further, or should the cause have been dismissed without prejudice to other proceedings? If the government had merely sought to enforce the performance of a duty imposed upon the Northern Pacific by its charter or by statute, the remedy would have been at law, by an ordinary action in mandamus, and not by a suit in equity. To such an action the Western Union would not have been a proper party, nor would it have been bound by any judgment obtained against the Northern Pacific. The jurisdiction of the Circuit Court as a court of equity arose solely from the fact that the contracts and arrangements with the Western Union and its possession and partial ownership of the telegraph lines and instrumentalities along the lines of railroad interposed an obstacle to the adequacy and efficiency of the remedy at law. The judicial ascertainment and removal of the entanglements arising from the joint ownership of the telegraph properties and the contractual relations between the defendants were peculiarly within the province of a court of equity. An action at law would have been wholly inadequate to secure the measure of relief sought by the government. But, jurisdiction in equity once secured, the court could, conformably with familiar principles, proceed to a decree that would settle all matters in dispute between the parties pertaining to the subject-matter of the litigation. United States v. Union Pacific Railway, 160 U. S. 1, 50, 16 Sup. Ct. 190, 40 L. Ed. 319. The averments of the original and amended bills and the prayers for relief clearly show that an important and essential purpose of the suit was the removal of the obstacles to the enforcement of the legal rights of the government; and in that particular feature of the case dwelt the elements of equitable jurisdiction. A decree was sought by the government annulling and canceling the contracts and arrangements between the Northern Pacific and the telegraph companies and the judicial ascertainment and adjudication of the rights of the government and of the defendants' claims of an exclusive right of way or of control or interest of any kind in the telegraph lines and property along the railroad. It is manifest, therefore, that the Western Union was an indispensable party to the suit and that relief so vitally affecting its interests could not be awarded in its absence. And as its codefendant, the Northwestern Telegraph Company, was merely a nominal party, the substance of its rights, if, indeed, it possessed any at all, being owned and controlled by the Western Union, it is also apparent that, with the departure of the latter from the case as a necessary consequence to the sustaining of its plea to the jurisdiction, the right to entertain the proceeding of the government as a suit in equity would thereupon cease. Upon a dismissal of the Western Union there would be present in court no defendant which asserted those impeding claims and interests the existence of which alone justified an appeal to a court of equity. The Western Union was not properly suable in the district of Minnesota without its consent. It seasonably presented its objection, and its plea should have been sustained. Its presence as a party to the suit was indispensable to the maintenance thereof in equity and to the granting of the relief asked by the government. The bill should, therefore, have been dismissed upon that ground, and not upon the merits. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Barney v. Baltimore City, 6 Wall. 280, 284, 18 L. Ed. 825; Bank v. Railroad, 11 Wall.

624, 20 L. Ed. 82; Ribon v. Railroad Companies, 16 Wall. 446, 450, 21 L. Ed. 367; Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792.

These conclusions render it unnecessary to consider whether the act of August 7, 1888, applies to the Northern Pacific, or whether that company has failed to comply with its requirements, or with the requirements of the act of July 2, 1864, by which the Northern Pacific Railroad Company was incorporated.

The decree of the Circuit Court is reversed, and the cause remanded, with directions to sustain the plea of the Western Union Telegraph Company and to dismiss the complainant's bill, without prejudice to any future proceeding.