PRICE et al. v. UNION LAND CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 18, 1911.)

No. 3,434.

1. CORPORATIONS (§ 320*)—STOCKHOLDERS' SUITS—GROUNDS FOR RELIEF.

A bill by stockholders against the corporation and individuals, which alleges that the individual defendants control the corporation, that they have issued to themselves a large proportion of its stock without consideration, and have caused property purchased with money of the corporation to be conveyed to themselves and to another corporation defendant organized by them, states a cause of action for relief on behalf of the corporation by the restoration of its property, and also incidentally by the cancellation of the stock wrongfully obtained by the individual defendants, by means 'of which their diversion of the property was made possible.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

2. CORPORATIONS (§ 320*)—STOCKHOLDERS' SUITS—PARTIES.

In such a suit, persons who were formerly stockholders, but were induced to part with their stock to the individual defendants by false and fraudulent representations may join as complainants on allegations of such facts, and may be restored to their status as stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

3. EQUITY (§ 149*)—STOCKHOLDERS' SUITS—PLEADING.

A right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation, and stockholders suing in such right cannot join therewith a cause of action for fraud and deceit practiced on them when they purchased their stock which is personal.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 342, 368-370; Dec. Dig. § 149.*]

4. CORPORATIONS (§ 320*)—STOCKHOLDERS' SUITS—RIGHT TO MAINTAIN IN FEDERAL COURT—EQUITY RULE 94.

In a stockholders' suit in a federal court, it is a sufficient compliance with equity rule 94 if complainants clearly show in their bill that the suit is not a collusive one to secure jurisdiction, and that the corporation will not move in its own behalf.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 320.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. EQUITY (§ 148*)—PLEADING—EFFECT OF MULTIFARIOUSNESS.
    Where a bill states a good cause of action, but couples with it another cause of action which renders it multifarious, it is error to dismiss the bill on the merits, but complainants should be given the right to replead, or on their failure the dismissal should be without prejudice.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 341–367; Dec. Dig. § 148.*]

Appeal from the Circuit Court of the United States for the District of Colorado.

Suit in equity by T. K. Price and others against the Union Land Company, and others. Decree for defendants, and complainants appeal. Reversed.

S. K. Stevenson (John R. Smith, on the brief), for appellants.

Clayton C. Dorsey (William V. Hodges and Cranston, Pitkin & Moore, on the brief), for appellees.

Before VAN DEVANTER and HOOK, Circuit Judges, and CARLAND, District Judge.

HOOK, Circuit Judge. This is an appeal from a decree sustaining a demurrer and dismissing complainants' bill. The bill was attacked on three grounds: That it stated no cause for equitable relief, that it was multifarious, and that complainants had not complied with Equity Rule 94. The trial court held the bill defective for the second and third reasons, and dismissed it, not without prejudice, but as upon the merits.

[1, 2] The bill is prolix and contains so much unnecessary redundancy and reiteration that the mind is confused in seeking the pleader's purpose. The confusion is increased by inconsistent averments, and the attempt to combine two distinct and unrelated causes of action in one. There is discoverable, however, a cause of action sufficiently stated to give complainants a standing in court when it is disentangled from the rest of the bill. It is what is commonly termed a stockholder's suit, and without stating it in detail as it appears in the bill its general outline is as follows: The complainants, who are citizens of Iowa, on behalf of themselves and all others similarly situated, sued the Union Land Company, the Denver & Northwestern Fuel Company, the Continental Trust Company, and six individuals, all of whom are citizens of Colorado. The Fuel Company was organized by some of the individual defendants under the laws of Colorado August 5, 1902, for the purpose, as stated, of acquiring coal lands and mining and selling coal. It had a capital of $1,000,000 in shares of $1 each, which was increased to $3,000,000 about five months later. The individual defendants as directors, officers, and stockholders are and have been from the beginning in active and complete charge of all the affairs of the Fuel Company. They induced complainants and other residents and citizens of Iowa to buy about $215,000 of the stock and pay for the same in full. The purchases and payments of the complainants aggregated $20,000. Shortly after the increase of the capital stock to $3,000,000 the individual defendants, being in con-

trol of the company, unlawfully allotted and distributed among them-selves $2,500,000 thereof, either without any consideration whatever or upon a trifling consideration bearing no reasonable relation to the amount or par value of the stock. A large amount of land in Routt county, Colo., was purchased with the moneys actually paid in by the bona fide stockholders, and though the purchases were for the Fuel Company some of the individual defendants took the titles in their own names and refrained from recording the deeds. The grantees subsequently conveyed to the Fuel Company, but the deeds, never recorded, were afterwards suppressed or destroyed. For the purpose of placing the property of the Fuel Company beyond its reach, of making secure their own interests unlawfully acquired without consideration, and of defrauding the Fuel Company and its bona fide stockholders, the individual defendants caused the Union Land Company to be organized about April 1, 1907, under the laws of Colorado, with a capital of $50,000. The lands of the Fuel Company were thereupon conveyed to the Land Company. The entire capital stock of the Land Company is held or controlled by three of the individual defendants, and they compose its board of directors and are its officers and in the exclusive control of its affairs. The assets of the Land Company consist exclusively of the lands purchased for the Fuel Company with the moneys paid in by complainants and other stockholders similarly situated. The Land Company so controlled then issued bonds to the amount of $1,000,000, and to secure them executed to the defendant Trust Company as trustee a deed of trust upon the lands. The Trust Company, though not a guilty participant, is a necessary party to the suit. The bonds, after execution and certification, were delivered to three of the individual defendants who apportioned and distributed them largely among themselves and their associates without consideration. Some of the bonds were held to be exchanged for stock in the Fuel Company. Two of the complainants were induced by false and fraudulent representations to surrender their stock in the Fuel Company and accept the bonds of the Land Company in lieu thereof. All the defendants who had to do with the transfer of the property of the Fuel Company and with the execution, disposition, and receipt of the bonds, had notice of the unlawful plan and conspiracy of the individual defendants. In brief the Fuel Company was wrongfully and fraudulently stripped of its property without consideration. Complainants did not discover the matters complained of until after they had been consummated. These facts, recited with greater detail in the bill, constitute a case for equitable relief in the Fuel Company for the restoration of its property, and that the company be freed from the dominance and control of those whose stock was acquired contrary to law to the end that when the property is recovered it may be properly safeguarded and administered according to the purposes specified in its corporate charter. Three of the complainants are stockholders of the Fuel Company, and if the requisite conditions exist and they complied with Equity Rule 94 they may maintain the suit for the ultimate advantage and benefit of their corporation. The other two complainants exchanged their stock for bonds of the Land Company,

being induced to do so, they say, by false and fraudulent representations of the individual defendants. They may join their co-complainants in the suit for the principal relief upon averments sufficient for the annulment of the exchange in order that they may be restored to their original status as stockholders. The securing of the exchange is alleged to have been a part of the plan and scheme of the individual defendants, and it is but an obstacle which may be removed as incidental and preliminary to the main relief. United States v. Northern Pacific R. Co., 67 C. C. A. 269, 134 Fed. 715. It does not matter that all the complainants are not situated alike in this respect. "It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some material matters in the suit and they are connected with the others." Brown v. Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468. Objection is made to the union in the same suit of a cause of action for the cancellation of the stock of the individual defendants in the Fuel Company with one for the recovery on behalf of the Fuel Company of its property unlawfully diverted. Ordinarily there would be no relation or connection between such causes of action, but it fairly appears here from the averments of the bill that the diversion of the property of the Fuel Company to the personal benefit of the individual defendants was made possible by their control of the affairs of the company, and full, adequate, and complete relief under the special circumstances would seem fairly to include an enforced relinquishment of such control wrongfully acquired, held, and exercised to the damage of the company. In a broad sense, the suit is for restoration to a corporation of its property under conditions which will, when effected, insure its safeguarding and devotion to proper corporate uses and purposes. In Hosmer v. Railway & Iron Co., 65 C. C. A. 81, 129 Fed. 883, we said:

"The doctrine of multifariousness in equity pleading rests largely upon considerations of inconvenience and expense. Its limitations are not sharply defined, and it would be both difficult and unwise to formulate a rule for unvarying application. It often becomes a nice question whether the convenience of a complainant, and his interest that a multiplicity of suits be avoided, which is also of public concern, outweigh the inconvenience of the defendants arising from the joinder of two or more causes of action in a single suit, and whether the relation between the causes of action is sufficiently apparent to present a common point of controversy."

[3] But running through the bill is an attempted assertion of a cause of action against the individual defendants not for the use and benefit of the Fuel Company but exclusively affecting the complainants as individuals. It is for fraud and deceit practiced upon them in the original sale and purchase of the stock which they hold. Clearly such a cause of action has no place in a stockholders' suit brought for the benefit of the corporation. "A right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation." Porter v. Sabin, 149 U. S. 473, 478, 13 Sup. Ct. 1008, 37 L. Ed. 815. A right of a stockholder to sue for fraud and deceit practiced upon him when he purchased his stock is a personal one.

[4] Did complainants comply with Equity Rule 94? The bill and the amendment were duly verified. There are allegations, though not as direct as might be, that complainants were stockholders of the Fuel Company at the times of the transactions complained of, and showing that the suit is not a collusive one to confer upon a court of the United States jurisdiction of a case of which it would not other-wise have cognizance. The rule also requires that the bill "set forth with particularity the efforts of the plaintiff to secure such action as. he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the cause of his failure to obtain such action." The allegations of the bill cover these matters in detail. Without reciting them it is sufficient to say that complainants did everything that could reasonably be required of them. The rule does not demand that which is unreasonable or impossible. It is sufficient if complainants make it clearly to appear that the suit is not a collusive one to secure jurisdiction, and that the corporation will not move in its own behalf. Here the Fuel Company, according to the bill, was in the sole and exclusive control of the defendants charged with the wrongdoing through their possession of the executive offices, by being a majority of the board of directors and by holding five-sixths of the capital stock. Not only was information of the conditions refused, but it appears that the individual defendants declined to allow the company to proceed, and made it clear that if complainants proceeded in behalf of the company they would be met with active opposition.

[5] The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion. The trial court is authorized to require the complainants to recast their bill so as to state in proper form the cause of action upon which it can be maintained, and if they refuse to do so to dismiss it without prejudice.

