Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 The effect of Graham’s assignment to the complainant was undoubtedly to dissolve the partnership which had existed between Beauregard, May, and himself, but it did not make his assignee a tenant in common with the other two partners in the property of the firm. It seems to be assumed on behalf of the complainant, that in succeeding to Graham’s rights, the bank acquired an ownership of the effects of the firm jointly with Beauregard and May, and that, as Graham had been an equal partner with them, his assignee of course became the owner of one undivided third of the railroad lease and other property of the firm. ' But this assumption is based upon a misapprehension of the effect of the assignment. It has repeatedly been determined, both in the British and American courts, that the property or effects of a partnership belong to the firm and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts and after a settlement of the accounts between the partners; consequently that no greater interest can be derived from a voluntary sale of his interest by one partner, or by a sale of it under execution.
 
 †
 
 In
 
 Taylor
 
 v.
 
 Fields,
 

 ‡
 

 it was said that “ a party coming into the right of a partner” (in any mode, either by purchase from such partner, or as a personal representa
 
 *629
 
 tive, or under an execution, or commission of bankruptcy) “ comes into nothing more than an interest in the partnership, which cannot be tangible, cannot be made available, or be delivered but under an account between the partnership and the partner, and it is an item in the account that enough must be left for the partnership debts.”
 

 When, therefore, the bank obtained from Graham the assignment, which is the foundation of its claim in this suit, it obtained thereby no ownership of the lease made by the railroad company to Beauregard, and which he agreed to hold for the benefit of the firm, nor did it obtain any aliquot part of it, or of any of the effects of the firm. The utmost extent of its acquisition was an interest in the surplus, if any, which might remain after all debts of the firm should be paid, and after the liabilities of Graham to his copartners, as such, should be discharged. It was not in the power of Graham, by retiring from the firm in violation of the articles of copartnership, either to introduce another partner or to deprive the partners who remained of their right to have all the partnership property held for partnership purposes. Incident to the right of the bank to share in the surplus was a right to enforce a settlement of the partnership accounts in order to ascertain whether there was any surplus. It is true the words of the assignment were very broad. It purported to transfer all the estate, right, title, and interest in the lease made by the New Orleans and Carrollton Railroad Company to Beauregard, to which the assignor might be entitled by virtue of the articles of copartnership, and also all his right and interest in any property and effects of the partnership, and all debts due to him from the partnership or any member thereof. But no matter what its lauguage, it is clear no more could pass under it than the right of the assignor; and if, as we have said, that was not a right to the specific articles of property belonging to the firm, the bank obtained no such right. We are not now speaking of the fact that, under his contract with the railroad company, Beauregard had no right to transfer the lease either to the partnership or its members. The case does not require us
 
 *630
 
 to consider that inability. It is sufficient that the complainant’s right was only an equity to share in the surplus, if any, of the firm property after settlement of the partnership accounts, and that this is a bill for such a settlement. Manifestly, then, it is incurably defective, because neither Graham nor May are made parties defendant. It is too plain for discussion that to such a bill all the members of the firm are indispensable parties, for they are all directly affected by any decree that can .be made. How utterly impossible it is to ascertain what the equity of the complainant is, with the present state of the record, will appear more distinctly, if the provisions of the articles of copartnership be" considered. When it was formed, Beauregard had obtained from the New Orleans and Carrollton Railroad Company a lease of its railroad, with all its rolling stock, and with its corporate privileges, for the term of iwenty-fivte years. Though the sole lessee, and prohibited by his contract from assigning or underletting, it was nevertheless agreed between him and his copartners that the lease should be for their comm'on benefit; that May and Graham should each advance one hundred and fifty thousand dollars to carry on the enterprise of running the road, and that Beauregard should take charge of, manage, and direct the undertaking for the mutual advantage of the parties, at a fixed annual salary, selecting and appointing his own assistants. It was agreed that the money advanced, with eight per cent, interest, should be repaid from the annual profits of the enterprise, and that the remainder of the net profits should be equally divided between the partners, and that all losses should be equally borne by them. The contract evidently contemplated that the property of the firm and the management of its affairs should be in the hands of Beauregard. Books were to be kept showing not only all money received and expended, but also all purchases made on account of the copartnership, and monthly statements of amounts received and expended were required to be furnished by Beauregard to May and Graham. It was also agreed that the partnership should continue twenty-five years from the date
 
 *631
 
 of the lease, which was April 12th, 1866. Now, it is quite possible that, on settlement of the accounts, Graham may be found indebted to the firm, or to his copartners, and that the court would be required thus to decree. How can such a decree be made when he is no party to the record? Or it might appear that May is a large debtor to the firm. How can any decree be made against him ? How can any decree be made that will not prejudice one or the other of these partners? And yet, whether the bank complainant has any interest or not — whether it acquired anything under Graham’s assignment, can be determined only by a final and conclusive settlement of the partnership accounts between all the partners, two of whom are not parties to this suit.
 

 It is argued, however, on behalf of the appellant, that even if May and Graham wrnre necessary parties, the bill should not have been dismissed, but that the complainant should have been allowed to bring in new parties by a supplemental bill. It is, doubtless, the general rule that a bill in chancery will not be dismissed for w-ant of proper parties; but the' rule is not universally true. It rests upon the supposition that the fault may be remedied, and the necessary parties supplied. When this is impossible, and whenever a decree cannot be made without prejudice to one not a party, the bill must be dismissed. Nothing is to be gained by retaining it, when it is certain that the complainant can never be entitled to a decree in his favor.
 
 *
 
 In the present case, we have seen that no decree for an account can be made, until all the partners are made parties. But if both May and Graham had been made parties defendant, the Circuit Court would have had no jurisdiction of the case. It is said Graham might have been made a co-plaintiff. Perhaps he might, and had application been made in due season for such an amendment of the bill, it might have been the duty of the Circuit Court to grant it. But no such application wms made. The complainants chose to stand upon their case as they presented it. Possibly they never would have
 
 *632
 
 sought to bring in the necessary parties. The defendants could not bring them in. New parties cannot be brought into a cause by a cross-bill,
 
 *
 
 and had the bill not been dismissed, it must have been left at the option of the complainants whether the case should ever be brought to a final decree. Under these circumstances, there was no reason for retaining the bill.
 

 It is insisted, however, that the court erred in dismissing the bill, reserving only a right to sue Beauregard, May, and Graham, for a settlement of the partnership between them prior to the 14th and 16th of May, 1867. Yet if the right acquired by Graham’s assignment was, as the authorities show, not an ownership of the specific effects of the partnership, but only a right to share in the surplus remaining after the settlement of the partnership accounts and the payment of all its debts, as well as the just claims of the several partners, it is clear there can be in the complainant no equity against the railroad company, or against Hernandez, Binder, or Bonneval, who have succeeded to May’s rights (not his obligations), if they have not to Graham’s. No fraudulent confederacy is charged in the bill. At most, according to the complainant’s own showing, they are purchasers of property that belonged to the firm. There was, therefore, not only a want of indispensable parties, a want which cannot be supplied without ousting the jurisdiction of the court, but a misjoinder of the defendants, a misjoinder apparent upon the face of the bill. Hence the decree of the Circuit Court was correct.
 

 Aeeikmed.
 

 †
 

 West
 
 v.
 
 Skip, 1 Vesey, 239; Nicoll
 
 v.
 
 Mumford, 4 Johnson’s Chancery, 522; Doner
 
 v.
 
 Stauffer, 1 Pennsylvania, 198.
 

 ‡
 

 4 Vesey, Jr., 396.
 

 *
 

 Note 5,
 
 §
 
 541, Story’s Equity Pleadings; Shields
 
 v.
 
 Barrow, 17 Howard, 130.
 

 *
 

 Shields
 
 v.
 
 Barrow,
 
 supra.