87 F.2d 421 (1936)
STATE OF WASHINGTON
v.
UNITED STATES et al.[*]
STATE OF OREGON
v.
SAME.
COLUMBIA RIVER PACKERS ASS'N et al.
v.
SAME.
Nos. 8014, 8028, 8055.
Circuit Court of Appeals, Ninth Circuit.
December 18, 1936.
*422 *423 G. W. Hamilton, Atty. Gen., of Washington, and R. G. Sharpe, Asst. Atty. Gen., for appellant State of Washington.
I. H. Van Winkle, Atty. Gen., of Oregon, and Willis S. Moore and Francis T. Wade, Asst. Attys. Gen., for appellant State of Oregon.
Alfred E. Clark, Malcolm H. Clark, Jay Bowerman, and R. R. Bullivant, all of Portland, Or., for appellants Columbia River Packers Ass'n and others.
Carl C. Donaugh, U. S. Atty., and Edwin D. Hicks, Asst. U. S. Atty., both of Portland, Or.
Before WILBUR, MATHEWS, and HANEY, Circuit Judges.
HANEY, Circuit Judge.
Columbia River Packers Association, Baker's Bay Fish Company, and H. J. Barbey, hereinafter referred to as appellants, have appealed from a decree adjudicating that the United States, hereinafter referred to as appellee, is the owner and entitled to the immediate and exclusive possession of the sands and tide flats in question and enjoining appellants from occupying or attempting to occupy the property in question. After the suit was commenced by appellee against appellants, the State of Washington filed a motion asking leave to intervene, which motion was granted by order, which was thereafter set aside and the motion denied. The State of Oregon also asked leave to intervene by motion, which was thereafter denied. These States have taken separate appeals from the order denying the motions.
The dates of admission of Oregon and Washington as States, together with the material legislation regarding the boundary between them may be found in Washington v. Oregon, 211 U.S. 127, 29 S.Ct. 47, 53 L.Ed. 118.
On October 21, 1864, the Oregon Legislature passed an act, a part of which is as follows: "There is hereby granted to the United States, all right and interest of the State of Oregon, in and to * * * Sand Island, situate at the mouth of the Columbia River in this state; the said island being subject to overflow between high and low tide." (Sp.Laws 1864, p. 72.)
In the bill appellee alleged that it had been in possession of Sand Island as a military reservation since the passage of the above act, and that it "is now the exclusive owner thereof and entitled to the immediate and exclusive possession thereof"; that said island was within Clatsop county, Or., and within the jurisdiction of the court. It is also alleged that "Sand Island" is located and described upon a 1933 War Department map and chart, which is incorporated in the bill. The material *424 portion of that map and chart is as follows:

The sands and tide flats in question are situated to the west and southwest of Sand *425 Island in the estuary of the Columbia river, and are dotted on the map. At the upper end, the sands and tide flats are attached to Sand Island.
It is further alleged that the beach or spit on the west and southwest end of the island is peculiarly adapted to the drawing of seines and floating fishing gear, and that the said waters are immensely valuable for the purpose of seining for salmon; that on or about May 1, 1930, appellant Barbey and appellant Columbia River Packers Association, a corporation, hereinafter referred to as the association, leased from appellee for a period of five years, for seining purposes, the land on the south side of Sand Island, described as Sites No. 1, 2, 3, 4, and 5 in said lease, which sites are described and mapped in Strandholm v. Barbey, 145 Or. 427, 26 P.(2d) 46, which is incorporated in the bill; that defendants, after occupying Sand Island for the years 1930 and 1931, secured a cancellation of the lease and abandoned the premises.
It is also alleged that appellants used the properties described in the years 1932, 1933, and 1934, without paying rental therefor; that they "have threatened and do now threaten to enter upon said Island and appropriate said premises" for fishing purposes during the year 1935.
The final allegations are that appellants have no right, title, or interest in the premises and should be restrained from fishing and occupying the premises.
In their answer, appellants admit occupancy of certain premises, but allege that the premises so occupied are a part of land commonly known as "Peacock Spit," belonging to the State of Washington, and that they occupied said premises by virtue of a lease executed by that State to appellant Baker's Bay Fish Company, a corporation, which lease described the premises in controversy. Appellants also allege: "* * * that the shallow channel cutting across Peacock Spit in a southwesterly and northeasterly direction southerly of Cape Disappointment is not and never was a natural channel. It was caused in this manner: four or five years ago the `North Bend,' a large sailing vessel, went ashore on Peacock Spit at about where the southwesterly terminus of said channel is now located. It did not break up but, through the action of the winds, waves and tides, was slowly driven, during a period of a year or more, across Peacock Spit into the channel then existing between it and Sand Island and through the channel so cut water has continued to run with the ebb and flow of the tides since that time." In short, the appellants claim that the sands and tide flats, claimed by the United States, are not a part of Sand Island, but are a part of Peacock Spit.
Appellants Columbia River Packers Association and Baker's Bay Fish Company, by their answer raised, among others, three defenses: (1) That the suit involved the determination of the boundary line between the States of Oregon and Washington, and that therefore such states were indispensable parties; (2) that the suit involved the determination of title to land which the State of Washington claimed to own, and therefore it was an indispensable party; (3) that the premises involved were not located within the State of Oregon but were located within the State of Washington, and were therefore beyond the jurisdiction of the court.
The motion to intervene filed by the State of Washington was based upon the grounds that it was the owner of the land in controversy, and that it had an interest in the controversy.
The motion to intervene filed by the State of Oregon was based upon the grounds that it was the owner of the lands in controversy, stating that such lands were formed by accretions to the bed of the Columbia river at a point south of the boundary line between the States of Oregon and Washington, and that such lands were separated "from Sand Island by a continuous channel of navigable water, and from Peacock Spit by a continuous channel of navigable water." In short, that the land in question is a submerged island, and not a part of the tide lands of either Peacock Spit or Sand Island.
We thus find that the United States claims the land as a part of Sand Island; the State of Washington claims the land as a part of Peacock Spit; and the State of Oregon claims that the land is neither a part of Sand Island, nor a part of Peacock Spit, but is an accretion to a part of the river bed which is owned by it.

Classification of Parties.
In Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158, it is said: "The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest *426 in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."
This language has also been quoted in State of California v. Southern Pacific Co., 157 U.S. 229, 249, 15 S.Ct. 591, 39 L. Ed. 683, and although not quoted, the identical language is contained in Minnesota v. Northern Securities Co., 184 U.S. 199, 235, 22 S.Ct. 308, 46 L.Ed. 499.
In Barney v. Baltimore, 73 U.S. (6 Wall.) 280, 284, 18 L.Ed. 825, it is said: "There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such, that if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties if within its jurisdiction, before deciding the case. But if this cannot be done, it will proceed to administer such relief as may be in its power, between the parties before it. And there is a third class, whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to the jurisdiction."
In Williams v. Bankhead, 86 U.S. (19 Wall.) 563, 571, 22 L.Ed. 184, it is said: "The true distinction appears to be as follows: First. Where a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Secondly. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party if possible, and the court will not proceed to a decree without him if he can be reached. Thirdly. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant."
In 28 U.S.C.A. § 111 (originally enacted February 28, 1839) it is provided that "nonjoinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit." The old equity rule 47 provided: "In all cases where it shall appear to the court that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties." The statute and the rule 47 are merely declaratory of the equitable principles announced by the above cases, and do not change or modify those principles.[1]
Rule 47 quoted above was adopted as rule 39 in the Equity Rules of 1912 (28 U.S.C.A. following section 723), except that the words "necessary or," italicized above, were omitted. This omission seems to have no significance, in the sense of changing or modifying the prior cases, *427 but the distinctions made there are still essential.[2]
The classification, thus made, and the the proper distinctions, are not always verbalized or clearly made in the cases, for an examination of the many cases shows that often the word "necessary" is used, when the word "indispensable" would be the proper classification under the foregoing rules. Necessary parties under the above classification have been referred to as "conditionally necessary" parties, and "indispensable parties" under such classification have been referred to as "unconditionally necessary" parties.[3] In using the words "necessary" and "indispensable," hereinafter, we mean that "necessary" parties are those of the second class, or "conditionally necessary," and we mean that "indispensable" parties are those of the third class or "unconditionally necessary."
Under the rules quoted, we have seen that if a party falls within the classification of "formal parties," then there is no error in the nonjoinder of such parties. We know of no exceptions to this rule. With respect to those who fall within the classification of "necessary" parties, the nonjoinder of such parties is error, unless such parties come within one of the several exceptions to the rule. With respect to those who fall within the classification of "indispensable" parties, the nonjoinder of such parties is error, and to this rule we understand there are no exceptions, except where the parties are too numerous, when a special rule may be invoked.
In cases where there is error in nonjoinder of parties, either necessary or indispensable, the courts have fallen into common error by designating the error as "jurisdictional." The defect is not, properly speaking, a jurisdictional one as shown by the following quotation from Shields v. Barrow, supra, 17 How. 130, 141, 15 L.Ed. 158: "As is observed by this court, in Mallow v. Hinde, 12 Wheat. [193] 198 [6 L.Ed. 599], when speaking of a case where an indispensable party was not before the court, `we do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court." See, also, Barney v. Baltimore, supra, 6 Wall. 280, 285, 18 L.Ed. 825; State of California v. Southern Pac. Co., supra, 157 U.S. 229, 250, 15 S.Ct. 591, 39 L.Ed. 683; Minnesota v. Northern Securities Co., supra, 184 U.S. 199, 236, 22 S.Ct. 308, 46 L.Ed. 499; Bogart v. Southern Pac. Co., supra, 228 U.S. 137, 146, 33 S.Ct. 497, 57 L.Ed. 768.
There are many adjudicated cases in which expressions are made with respect to the tests used to determine whether an absent party is a necessary party or an indispensable party.[4] From these authorities it appears that the absent party must be interested in the controversy. After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of *428 such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?
If, after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable.
It has been mentioned that the nonjoinder of a necessary party is error unless the case falls within one of the several exceptions to the rule. Three exceptions are shown by the equity rule quoted. One of such exceptions is that if joinder of the necessary party would oust the court of jurisdiction over the other parties, then the court may proceed to a decree in the absence of such necessary party.[5]
On the other hand, the nonjoinder of an indispensable party is fatal error, and the court cannot proceed to a decree in the absence of such indispensable party,[6] notwithstanding the fact that the joinder would oust the court of jurisdiction.[7] Neither the statute nor the equity rule, quoted above, permit the court to proceed in the absence of an indispensable party.[8]

State of Washington is an Indispensable Party.
Applying now the rules laid down, we have no hesitancy in holding that the State of Washington is interested in the controversy, for it claims the particular property in controversy. Appellants contend that the State of Washington is an indispensable party, and on the other hand the government contends that it is not. The government does not specifically state that the state is only a necessary party, but judging from the class of cases cited by it, such is apparently the claim.
We next proceed to a determination of the four questions stated above, as applied to the instant case. The first is: Is the interest of the State of Washington in the premises in controversy, distinct and severable from that of appellants? The bill contains no allegation which shows any interest of the State in the disputed premises. The answer alleges that the State is the owner of the disputed premises, and that appellants are in possession under a lease from the State, and these allegations are denied. It is at this stage of the case that the court must determine whether or not it will proceed to a determination. We say this with reference to the suggestion of the government in its brief that, "The State of Washington has not at any time leased or purported to lease the premises embraced in this proceeding." That is one of the issues of the case. The fact may be as the government contends, but the allegations disclose the interest of that State, and it is before the trial, under such circumstances, that the court must decide whether or not there must be other parties joined. This is especially true here where the alleged landlord seeks to come into the case and support the allegations of appellants in that regard. Thus the question comes down to the proposition as to whether or not a lessor's interest is distinct and severable from that of the lessee.
We believe that the leasehold estate is severable, if for no other reason because the alleged fee owner has separated such estate from its interest by conveying such estate. However, it has been held that the interest of one distributee[9] or heir[10] of an estate is severable from the interests of the other distributees or heirs; that the right of possession of a permittee or licensee *429 is severable from the interest of the alleged owner;[11] that the equitable title is separable from the legal title;[12] that the interest of a state, claiming property of a decedent by escheat, is separable from the interest of parties claiming to be heirs of decedent;[13] and that the interest of one tenant in common is separable from the interests of the other tenants in common.[14] A leasehold estate would be as much separable as the interests in these particular instances. See South Penn Co. v. Miller (C.C.A.4) 175 F. 729, 99 C.C.A. 305.
The second question is: Can the court render justice between appellants and appellee, in the absence of the State of Washington? We have no difficulty in answering this question in the affirmative. The court can easily adjudicate that appellants have neither the title or right of possession. If appellants defend on the ground that some one else owns the property, such a defense may be presented by them. It would not be necessary for the alleged owner to present such a defense, for complainant would have to prevail on the strength of its title, and not on the weakness of appellants' title.
The third question is: Will the decree made in the absence of the State of Washington, have no injurious effect on the interest of such State? The only argument offered by appellants is that the decree would effect the interests of the State of Washington, by placing a cloud on the latter's title. With this argument in mind, does a decree adjudicating that a lessee has no title or right of possession affect the interest of the lessor?
Appellants rely on California v. Southern Pacific Co., supra, However, the case is not analogous, for the court did not hold that the lessor (Central Pacific Railroad Company) was an indispensable party, but held other parties to be indispensable. Although the point was not directly passed on, the case lends some support to the statement that a lessor, under such circumstances is not an indispensable party.
In Skeen v. Lynch (C.C.A.10) 48 F. (2d) 1044, certiorari denied 284 U.S. 633, 52 S.Ct. 17, 76 L.Ed. 539, the plaintiff had obtained a patent from the United States which he alleged included oil and gas. Plaintiff asked that his title be quieted against a defendant, who, it was alleged, claimed some interest or title in the oil and gas. Another count in the bill disclosed that defendant was a permittee under the government and might later become a lessee of the government. The court held that the United States was an indispensable party. We believe the result of that decision to be right, but the ground on which it was based might be questioned. That case falls within the principle of other like cases,[15] that the disposal of property belonging to the United States has been vested in the Land Department, and until that department has disposed of such property, the courts will not interfere. The courts are under no duty nor do they have the power to dispose of property on behalf of the government.
Appellants also cite Gregory v. Stetson, supra; New Mexico v. Lane, 243 U.S. 52, 37 S.Ct. 348, 61 L.Ed. 588; and Chicago, M., St. P. & R. Co. v. Adams County (C.C.A.9) 72 F.(2d) 816. None of these cases involve lessors and lessees, and they are therefore not in point.
Our examination discloses two cases involving lessors and lessees. In Lee v. Lehigh Valley Coal Co., 267 U.S. 542, 45 S.Ct. 385, 386, 69 L.Ed. 782, where one of two lessors sued a lessee to construe and establish the lease, and obtain an accounting for both lessors, the other lessor was a "`necessary' even if not an indispensable party." The court did not undertake to decide whether or not plaintiff could have maintained the suit alone had he so elected because the other lessor was named as a defendant. This case aids us little.
In South Penn Oil Co. v. Miller (C.C. A.4) 175 F. 729, 99 C.C.A. 305, plaintiff, claiming to be the lessee of one party, sued defendant, who claimed to be the lessee of another party, and asked "that a decree be entered finally determining that the *430 [defendant] has no rights or interest of any kind in or to said property [leased]"; it was held that the alleged lessors were indispensable parties. It appeared in that case that a certain fund was also in controversy, in which the lessees (whichever one was entitled) had a seven-eighths interest, and his respective lessor was entitled to the other one-eighth interest. In the opinion, 175 F. 729, at page 736, it is said that the "court below could not finally and effectively dispose of the controversy" because "the final decree disposed of the funds in which they [lessors] were interested, and decided the title to the property which they claim to own in fee simple."
If we accept this statement that the decree decided the title to the property, it is apparent that in the instant case, appellant State of Washington is an indispensable party. To test the soundness of this rule, it is well to consider what happens when a term for years is granted. When an estate for years is granted, the grantor divests himself of the right of possession for the term specified. At the end of that term this right of possession passes or reverts to the grantor by operation of law  a process which is commonly called "reversion." It is described in 1 Cooley's Blackstone (4th Ed.) 578, as follows:
"An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. Sir Edward Coke describes a reversion to be the returning of the land to the grantor or his heirs after the grant is over * * *.
"The doctrine of reversions is plainly derived from the feudal constitution. For when a feud was granted to a man for life, or to him and his issue male, rendering either rent or other services; then, on his death or the failure of issue male, the feud was determined, and resulted back to the lord or proprietor, to be again disposed of at his pleasure."
The right of possession having been granted by the grantor, the latter, of course, does not again acquire that right until the term, for which he has granted it, terminates. Such right of possession, upon termination of the term, then reverts to the grantor. While this right of possession is in the lessee, a decree, in a suit brought against the lessee by a third party, adjudicating that such lessee has no title or right of possession, because his grantor had none to convey to him, directly adjudicates against that right, by adjudicating that such right of possession was in neither the lessor nor the lessee. The lessor is affected (not in the sense that he is concluded by the decree as res judicata), because the thing, which he claims he owned at the time of the grant to the lessee, and which he claims will revert to him, is declared by the decree to be nonexistent. Such a decree then does have an effect on the lessor's rights, for at the termination of the term, under the decree the right of possession could not revert to the lessor.
It is true that the decree does not adjudicate the reversionary interest, but it does have an effect thereon because in such reversionary interest there is a right to receive, at some future time, the right of possession. This right of possession is so bound up in the reversionary estate and the estate for years, that a decree against the leasehold estate, under such circumstances, has a direct effect on the reversionary interest. In other words, the lessee does not completely own the right to be adjudicated, but the lessor has an interest in such right.
In this statement, we find the distinction in the cases cited by appellee. Thus in Williams v. United States, supra, the absent party owning the legal title, owned no part of the equitable title which was being adjudicated. In United States v. Lee, supra, the occupation itself, as distinguished from the right of possession,[16] was adjudicated. The defendant, who was in possession, was a mere licensee or permittee, and as such did not own or have any part of the right of possession. 1 Tiffany, Real Property (2d Ed.) 120, § 47. Thus, as between defendant and the absent party, in that case the entire right of possession was in the absent party, and that right could not in fact have been affected. In the instant case, however, both the absent party and the appellants have an interest in the right of possession, and an adjudication affecting that right naturally affects both parties. Further, that case deals principally with the proposition as to whether the immunity from suit against the government, also extends to its officers and agents. We have been unable to find a single statement in *431 that case which in any manner indicates that the question of indispensable parties was before the court.
So, also, we find in Rose v. Saunders, supra; Payne v. Hook, supra, and Williams v. Crabb, supra, that the absent parties neither owned nor claimed to own any interest in the particular undivided interest of the plaintiffs in the property in question. The particular interests in those cases were that of a cotenant, a distributee, and an heir, respectively. One contenant owns no part of the other cotenants' interest; one distributee owns no part of the other distributees' interest; and one heir owns no part of the other heir's interest. Likewise in O'Connor v. Slaker, supra, the State of Nebraska claimed no part of the interest of the alleged heirs in the property. What the State did claim was that the heirs were not in fact heirs. If the plaintiffs actually had an interest in the property, the State did not claim it. The issue was heirship, not title.
The alleged lease from the State of Washington to appellants calls for a yearly rental of $5,000 payable in advance. At the conclusion of the trial, and after the decree had been entered, the matter stood in a peculiar position. Appellants, who ordinarily would be estopped to deny their landlord's title, would be in a position where they would be obligated to pay a rental for the right of possession, which a decree had adjudicated that they did not have. If appellants could plead the decree as a defense to an action on the lease, the rights of the State of Washington would be still more affected, because in such situation, the decree would conclude its rights under the lease.
With respect to the fourth question, it may be, as the government contends, that the State of Washington could file a suit to recover possession against an agent of the government who might be in possession of the premises. It must be admitted that such remedy is not entirely adequate, because the sole thing such a suit could determine would be the possession of the occupant, and not that of the United States. But in the instant case, the title, right of possession, and possession are litigated. It is mentioned by appellants that in so far as the title is concerned, the State of Washington would be without a remedy, because, such State could not sue the United States without its consent. Be that as it may, we see no reason for determining whether or not the decree entered is consistent with equity and good conscience, for the reason that the rights of the State of Washington are directly affected by the decree, and therefore such State is an indispensable party.
Since the interest of the State of Washington will be directly affected by the decree, we must hold that such State is an indispensable party. As pointed out above, however, the nonjoinder of such State, is not a jurisdictional defect, and therefore we are not prohibited from considering other arguments in the case.
The government argues that since the State of Washington has not consented to be sued, such State cannot be made a party. If such be the fact, the government is in no different position than a private litigant in that respect. It would seem, however, that the government could, if it wished, bring its suit in the Supreme Court. However that may be, since such State is an indispensable party, the court cannot determine the controversy, in its absence.
Appellants contend that the district court has jurisdiction in a suit between the United States and a State. The only reference, to such contention, made by the government and which we have noticed, is the following statement: "We do not contend that under a proper circumstance a State may not be joined as a party in the Federal District Courts without thereby depriving such courts of jurisdiction. The rule, as counsel have shown, is quite definitely established to the contrary." Regarding this point, there is no question before us.
In view of the foregoing it is unnecessary to consider the other two defenses specifically hereinbefore enumerated.

Intervention.
We are thus brought to a consideration of the appeals of the States from the order denying their motions for leave to intervene. Appellee questions the sufficiency of the practice followed by the States in attempting to intervene, in that the motions are insufficient pleadings.
The motions recited that the particular states were appearing, and asked for an order granting leave to intervene, which motions were based on the grounds recited above. The facts appearing from these motions, showing their interest, were unverified, and were not supported by affidavits. *432 They were signed by attorneys-general of the respective states.
Equity Rule 37 (28 U.S.C.A. following section 723) provides, in part, that, "Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding." No mode of proceeding, or procedure is specified.
Concerning intervention proceedings it is said in 47 C.J. 94, § 186: "The view usually expressed by the courts in discussing the origin and development of the proceeding is that in jurisdictions in which the common law system prevailed intervention was unknown in courts of law and also in equity, but was in use to some extent in the ecclesiastical courts; it is apparently derived from the civil law. Therefore in common-law jurisdictions, intervention is usually regarded as of purely statutory origin; but to a certain extent the remedy has been developed independently of statute in some jurisdictions, including, naturally, jurisdictions in which the legal system has substantially been affected by civil law practices."
It is thus quite apparent that intervention may be authorized by virtue of a State statute in an action at law, and by virtue of Equity Rule 37 in a suit in equity. If the intervention is sought in an action at law, the procedure specified by the State statute is applicable, by reason of the Conformity Act (28 U.S.C.A. § 724). By express terms the Conformity Act is not applicable to equity suits. Therefore, since neither the Equity Rules nor a federal statute provide the procedure to be followed in such a proceeding, what is the proper procedure?
In note 573 to Equity Rules (28 U.S.C. A. following section 723, p. 220), we find the following:
"It has been said that the procedure on intervention is not well defined. Rhinehart v. Victor Talking Mach. Co. (D.C. N.J.1917) 261 F. 646, 648.
"In the orderly procedure of intervention there seems to be three steps: (1) Motion for leave to intervene; (2) if this motion is granted a petition of intervention is filed; (3) upon an order granting the petition of intervention a bill of intervention is filed [compiler's note]."
Other expressions of opinions as to the proper procedure are found in 3 Cyc.Fed. Proc. 770, § 927, and in 7 Hughes, Fed. Prac. 145, § 4319. From these it can be seen that there is no well-settled procedure.
All of the states in this circuit have statutes prescribing the procedure to be followed in intervention.[17] The Oregon statute (Code 1930, § 1-315), with which the statutes of most of the states in this circuit are practically identical, provides: "At any time before trial any person who has an interest in the matter in litigation may, by leave of court, intervene in the suit, action or proceeding. Intervention takes place when a third person is permitted to become a party to a suit, action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the suit, action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it."
In the absence of a federal statute, equity rule, or trial court rule regulating the procedure to be followed in intervention in equity, we regard it as proper practice, though not exclusive, to follow the State statute thereon, if such statute is "reasonable and adapted to the purpose." Toledo Computing Scale Co. v. Computing Scale Co. (C.C.A.6) 142 F. 919, 922. All of these statutes cited appear to be reasonable and adapted to the purpose.
In view of the lack of a precedent in this circuit regarding the proper practice on intervention, we will assume for the purposes of this case, that the motions are sufficient as pleadings. By saying this we do not wish to be understood as approving such practice in the future.
Appellee has filed motions in the appeals of each of the States, to dismiss the appeals, because (1) the order appealed *433 from is not a final order; (2) the granting of leave to intervene is discretionary, and no appeal lies from the order denying intervention.
With exceptions not here pertinent, an appeal to this court can be taken only from a final decision of the District Court. 28 U.S.C.A. § 225. Although the cases generally state various tests to ascertain whether or not an order denying intervention is appealable, the primary question is: Is the order denying intervention a final decision?
The test ordinarily applied to determine whether an order is final is that an order is final if it will "terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered." Bostwick v. Brinkerhoff, 106 U. S. 3, 1 S.Ct. 15, 16, 27 L.Ed. 73. As applied to a controversy between parties to the suit and parties attempting to intervene, this simply means that if the order denying intervention terminates the litigation of the question sought to be litigated between such parties, then the order is final and appealable,[18] under the express terms of the statute. On the other hand, if the litigation of the question sought to be litigated is not terminated, then the order is not appealable,[19] because the order does not "terminate the litigation between the parties on the merits of the case."
Ordinarily, the denial of the petition adjudicates nothing but the right to intervene, and has no force as res judicata on the merits. Such a denial "leaves the petitioner at full liberty to assert his rights *434 in any other appropriate form of proceeding." In other words, the petitioner in an independent proceeding of some kind may litigate the same question which he seeks to litigate by intervention. If there is any "other appropriate form of proceeding" open to the intervener, the order denying intervention is not final, and therefore not appealable, because the order does not "terminate the litigation between the parties on the merits of the case."
However, it sometimes appears that the interveners have no remedy to litigate their question, except by intervening in an existing action or suit. In such cases, unless the interveners are permitted to litigate their questions in the pending litigation, their rights, whatever they may be, will be entirely lost, for they have no remedy by which such rights may be protected or adjudicated. An order denying such parties leave to intervene is, as this court stated in its first decision touching the question,[20] "a practical denial of all relief to the petitioner." Therefore such an order is final and appealable.
When a motion to dismiss an appeal from an order denying intervention is made, we must determine whether or not the order terminates the litigation of the question sought to be litigated by intervention. If so, we may then review the action of the trial court in denying the intervention because the order is final. However, if the order does not so terminate the litigation, we cannot review the trial court's action[21] because the order is not final, and therefore no appeal can be taken.
In the instant case, the states sought to intervene to protect and adjudicate their title to the island, as well as the right of possession. Appellee the State of Washington and the State of Oregon, each claimed title and ownership to the island. Under United States v. Lee, supra, the States might have a remedy to litigate the occupancy. They assert, however, that they have no available remedy for the adjudication of title because appellee has not consented to the bringing of a suit. We believe and hold that the denial left the States no remedy to adjudicate the title to the island. The order denying the intervention was a practical denial of relief in that respect, and therefore the orders are appealable.
When leave is asked to intervene, the rights of the proposed intervener are measured by Equity Rule 37, together with the absence or presence of any other available remedy. The rule provides that if a proposed intervener (1) claims an interest in the litigation and (2) if the intervention is in subordination to, and in recognition of, the propriety of the main proceeding, then such person "may be" permitted to intervene. Unless both of those elements are present, then the court could not allow intervention at all. If both are present, but the proposed interveners have other remedies available to them by which they may assert the same right, then whether or not intervention should be allowed, rests in the discretion of the trial court. It may grant or deny leave to intervene as it sees fit. But where both elements, specified by the rule are present, and there is no other remedy available to the proposed interveners, then there is an absolute right to intervene, and under such circumstances the court has no discretion, but must allow the intervention. (See the cases cited under note 18.)
As applied to the instant case, the subject of the suit is Sand Island. Both states claim a direct and immediate interest therein. The element, prescribed by the rule, that the proposed intervener must claim an interest in the litigation is therefore fulfilled.
The second element prescribed by the rule is that "the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding." The construction of that part of the rule is that the phrase "in subordination to" and the phrase "in recognition of" both refer to "the propriety of the main proceeding." In other words, the rule means that "the intervention shall be in subordination to * * * the propriety of the main proceeding" and that "the intervention shall be * * * in recognition, of the propriety of the main proceeding." If such construction is correct, as we hold it to be, the part of the rule quoted simply means that a person cannot intervene to *435 challenge the court's jurisdiction over the main proceeding.[22] Since the statement was made in United States v. California Canneries, 279 U.S. 553, 556, 49 S.Ct. 423, 424, 73 L.Ed. 838, indicating that the rule is applicable only when intervention is sought "for the purpose of impeaching a decree already made," the second circuit has questioned the correctness of the application of the rule to parties proposing to intervene prior to decree. In re Heilbroner (C.C.A.) 69 F.(2d) 643, 644. The case decided by this court cited in note 22 goes only to the extent of holding that intervention cannot be had for the purpose of impeaching a decree already made. Some of the cases cited in note 22, however, apply the rule to instances where parties wish to intervene before decree to challenge the jurisdiction of the court.
It is unnecessary to determine that question in this case, because the motions do not say that either of the states question the jurisdiction of the court. There is nothing in the record to show that the states have or will question the jurisdiction of the court. In the absence of such a showing, intervention could not be denied on that ground.
It is true that the State of Oregon claims title to the island adverse to both plaintiff and defendants, and that if the rule announced in Baxter v. McGee (C.C.A.8) 82 F.(2d) 695, 698, certiorari denied 298 U.S. 680, 56 S.Ct. 948, 80 L. Ed. 1401, were followed, we would of necessity be compelled to affirm the order denying the application of the State of Oregon to intervene. It was held in that case, that a person cannot "intervene and claim title as against both plaintiff and defendant." 82 F.(2d) 695, at page 698. We are unable to follow that case because it fails to recognize the equitable principles that equity will act to prevent a multiplicity of suits, and that "any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause." Equity Rule 37 (28 U.S.C.A. following section 723). We therefore hold that an intervener's claim to the subject of the suit may be adverse to the claims of both plaintiff and defendant, so long as all of the claims are to or on the subject of the main suit. We find support for this construction in the provision of the Oregon statute which specifically provides for intervention when an intervener wishes to challenge the rights of both plaintiff and defendant. While that statute is not controlling in this court as to the method or process of intervention, it is indicative of the policy of the State of Oregon legislatorially declared with respect to the field open to interveners.
We conclude that the states are without remedy to litigate title to the island against the United States, and therefore the orders denying intervention to the states were final orders and appealable. We further conclude in reviewing the action of the court in disposing of the rights of the states to intervene, that the court erred in denying leave to intervene for the following reasons: (1) That the states are without remedy to litigate title to the subject of the suit, if intervention is denied; (2) that each state claims "an interest in the litigation;" and (3) that the intervention will "be in subordination to, and in recognition of, the propriety of the main proceeding," under either construction of that language. Because of these reasons, the states have shown an absolute right to intervene, and the trial court had no discretion in regard thereto.
Appellee also contends that neither the State of Washington, nor the State of Oregon has consented to become a party to the suit; that the Attorneys General of such states could not confer consent. and therefore intervention could not be allowed in the absence of such consent. Although there is another answer to this proposition, we prefer to place our decision on the ground that questions cannot be raised for the first time on appeal.
*436 The decree is reversed, and the case remanded to the trial court to take further action in harmony with this opinion.
MATHEWS, Circuit Judge (dissenting).
The United States, hereinafter called plaintiff, filed its bill of complaint in the District Court of the United States for the District of Oregon against Columbia River Packers Association, Baker's Bay Fish Company, and H. J. Barbey, hereinafter called defendants, alleging that plaintiff is the owner and entitled to the exclusive possession of a tract of land known as Sand Island situate in Clatsop county, in the State and District of Oregon; and that defendants have trespassed on Sand Island and have threatened to and will, unless enjoined, continue so to trespass. The bills prays:
"1. For an order of the Court, directing [defendants] to appear at a time fixed by this Court and show cause why the said defendants should not be enjoined and restrained from trespassing upon the said premises[1] set forth in the [bill of] complaint herein and from seining said premises and the landing of fish thereon and using said premises for horses and men and carrying on said fishing and seining operations.
"2. That upon hearing of this cause the Court decree that the defendants herein, and each of them, have no right, title or interest in and to those certain premises[2] lying in the Columbia River, south and west of Sand Island, or south and east of the main north ship channel of the Columbia River, as shown by the Government map for the year 1933, and that the plaintiff is the owner and entitled to the immediate and exclusive possession thereof,[3] and that the Court render a further decree restraining and enjoining the said defendants, and each of them, from using said premises[4] in the manner aforesaid, or at all.
"3. That plaintiff recover of and from defendants its costs and disbursements incurred herein."
Defendants filed an answer in which they admit that plaintiff is the owner of Sand Island, and deny that they have trespassed or have threatened or intend to trespass thereon. Other allegations of the answer are irrelevant and redundant. The only issue presented by the pleadings is whether or not defendants have trespassed or have threatened or intend to trespass on Sand Island.
On June 3, 1935, eight days before the date of final hearing, the State of Washington moved for and obtained an order permitting it to intervene in the case. No complaint or other pleading in intervention was ever filed. On June 7, 1935, plaintiff moved the court to set aside the order permitting such intervention. On June 10, 1935, the State of Oregon filed a motion for leave to intervene. No proposed complaint or other proposed pleading accompanied either State's motion, nor did either motion indicate what pleading would be filed or what relief would be asked if intervention were allowed. On June 11, 1935, the District Court set aside its order allowing the State of Washington to intervene and thereupon ordered that both motions for leave to intervene be denied.
Thereafter the District Court heard the case and entered its final decree in favor of plaintiff. The States of Washington and Oregon have appealed (Nos. 8014 and 8028) from the order denying their motions for leave to intervene. Defendants have appealed (No. 8055) from the final decree.
Plaintiff has moved to dismiss the appeals in Nos. 8014 and 8028, on the ground that the order denying leave to intervene was not an appealable order. The point is well taken. True, there are cases where the denial of leave to intervene is, in practical effect, a denial of relief to which the intervener is entitled and which he can only obtain by intervention. Richfield Oil Co. v. Western Machinery Co. (C.C.A.9) 279 F. 852, 855; Cathay Trust v. Brooks (C.C.A.9) 193 F. 973, 974. But this is not such a case. Here the denial of leave to intervene did not determine the merits of any claim of the State of Washington *437 or of the State of Oregon, or prejudice the rights of either State in any way. The motions for leave to intervene were addressed to the discretion of the District Court, and the denial thereof was not a final decision from which an appeal may be prosecuted. New York v. Consolidated Gas Co., 253 U.S. 219, 221, 40 S.Ct. 511, 512, 64 L.Ed. 870; Credits Commutation Co. v. United States, 177 U.S. 311, 314, 317, 20 S.Ct. 636, 44 L.Ed. 782; Guion v. Liverpool, London & Globe Ins. Co., 109 U.S. 168, 173, 3 S.Ct. 108, 27 L.Ed. 895; Ex parte Cutting, 94 U.S. 14, 20, 22, 24 L.Ed. 49; Farmers' & Merchants' Bank v. Arizona Mutual Savings & Loan Ass'n (C.C.A.9) 220 F. 1, 7. The motions to dismiss should be granted.
Defendants contend that the States of Washington and Oregon are indispensable parties to this suit, and that, without them, the trial court had no jurisdiction. This contention is baseless. As before stated, the only issue in this case is whether or not defendants have trespassed or have threatened or intend to trespass on Sand Island. There is nothing to indicate that the State of Washington or the State of Oregon has or could possibly have any interest in this controversy. There is, therefore, no basis for the claim that either State is an indispensable party to this suit.
The District Court found that defendants had trespassed and were threatening to trespass on Sand Island. This finding is amply supported by the evidence. There was, therefore, no error in decreeing that defendants be enjoined from further trespassing on Sand Island.
By this decree, the District Court not only enjoined such trespassing, but attempted also to establish the boundaries of Sand Island, declaring that the sands and tide flats situate along the southerly and westerly shore of the island had become a part thereof by accretion. In this respect the decree is erroneous. This is not a boundary suit. The pleadings raise no issue as to boundaries, or as to whether the sands and tide flats referred to do or do not constitute a part of Sand Island. In a boundary suit the adjacent landowners are necessary parties defendant. 9 C.J. 269. There are no such defendants in this case. Here the defendants are mere trespassers. Between them and a plaintiff conceded to be the owner there can be no valid adjudication of boundaries.
The decree should be modified by striking therefrom those portions thereof which purport to establish the boundaries of Sand Island, and all portions thereof relating to the sands and tide flats above referred to. As thus modified, the decree should be affirmed.
NOTES
[*] Rehearing denied Feb. 23, 1937.
[1] Shields v. Barrow, supra; Barney v. Baltimore, supra; State of California v. Southern Pacific Co., supra; Minnesota v. Northern Securities Co., supra; Waterman v. Canal-Louisiana Bank & T. Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80; Bogart v. Southern Pac. Co., 228 U. S. 137, 33 S.Ct. 497, 57 L.Ed. 768.
[2] 3 Cyc.Fed.Proc. § 715, p. 240, and n. 17 on that page. See, also, Chicago, M., St. P. & P. R. Co. v. Adams County (C.C.A. 9) 72 F.(2d) 816.
[3] 7 Hughes, Federal Practice, § 4292, p. 120; 28 U.S.C.A., Equity Rules, following section 723, pp. 125, 129, 132, notes 262, 265, 272.
[4] Cameron v. M'Roberts, 16 U.S. (3 Wheat.) 591, 593, 4 L.Ed. 467; Elmendorf v. Taylor, 23 U.S. (10 Wheat.) 152, 167, 6 L.Ed. 289; Mallow v. Hinde, 25 U.S. (12 Wheat.) 193, 198, 6 L.Ed. 599; Story v. Livingston, 38 U.S. (13 Pet.) 359, 375, 10 L.Ed. 200; Hagan v. Walker, 55 U.S. (14 How.) 29, 36, 14 L.Ed. 312; Shields v. Barrow, supra, 17 How. 130, 140, 15 L.Ed. 158; Barney v. Baltimore, supra, 6 Wall. 280, 284, 18 L.Ed. 825; Horn v. Lockhart, 84 U.S. (17 Wall.) 570, 579, 21 L.Ed. 657; Gregory v. Stetson, 133 U.S. 579, 586, 10 S.Ct. 422, 33 L.Ed. 792; California v. Southern Pac. Co., supra, 157 U.S. 229, 249, 15 S.Ct. 591, 39 L.Ed. 683; Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. 33, 49, 30 S.Ct. 10, 54 L.Ed. 80; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 80, 41 S.Ct. 39, 40, 65 L.Ed. 145; Commonwealth Trust Co. v. Smith, 266 U.S. 152, 159, 45 S.Ct. 26, 28, 69 L.Ed. 219.

See, also, 3 Cyc.Fed.Proc. 241, § 715; 4 Hughes Fed.Prac. 120, § 2333; 7 Id. 124, § 4296.
[5] See, also, Fourth Nat. Bank v. New Orleans & R. Co., 78 U.S. (11 Wall.) 624, 631, 20 L.Ed. 82.
[6] Hagan v. Walker, supra, 14 How. 29, 36, 14 L.Ed. 312; Coiron v. Millaudon, 60 U.S. (19 How.) 113, 15 L.Ed. 575; Fourth Nat. Bank v. New Orleans & C. R. Co., 78 U.S. (11 Wall.) 624, 631, 20 L.Ed. 82; Gregory v. Stetson, supra, 133 U.S. 579, 586, 10 S.Ct. 422, 93 L.Ed. 792; State of California v. Southern Pac. Co., supra.
[7] State of California v. Southern Pac. Co., supra.
[8] Hagan v. Walker, supra, 14 How. 29, 36, 14 L.Ed. 312; Coiron v. Millaudon, supra, 19 How. 113, 115, 15 L.Ed. 575; Gregory v. Stetson, supra, 133 U.S. 579, 587, 10 S.Ct. 422, 33 L.Ed. 792; State of California v. Southern Pac. Co., supra, 157 U.S. 229, 250, 15 S.Ct. 591, 39 L.Ed. 683.
[9] Payne v. Hook, 74 U.S. (7 Wall.) 425, 19 L.Ed. 260.
[10] Williams v. Crabb (C.C.A. 7) 117 F. 193, 59 L.R.A. 425.
[11] United States v. Lee, 106 U.S. (16 Otto) 196, 1 S.Ct. 240, 27 L.Ed. 171. For the distinction between a licensee and a lessee, see 1 Tiffany Real Property (2nd Ed.) 120 § 47.
[12] Williams v. United States, 138 U. S. 514, 11 S.Ct. 457, 34 L.Ed. 1026.
[13] O'Connor v. Slaker (C.C.A. 8) 22 F. (2d) 147.
[14] Rose v. Saunders (C.C.A. 9) 69 F. (2d) 339.
[15] Wilson v. Elk Coal Co. (C.C.A. 9) 7 F.(2d) 112, certiorari denied 269 U.S. 587, 46 S.Ct. 203, 70 L.Ed. 426; Proctor v. Painter (C.C.A. 9) 15 F.(2d) 974.
[16] For the distinction, see 1 Cooley's Blackstone (4th Ed.) 593.
[17] Comp.Laws Alaska 1933, § 3394; Rev.Code Ariz.1928, § 3793; Cal.Code Civ.Proc. § 387; Idaho Code Ann.1932, § 5-322; Rev.Codes Mont.1921. § 9088; Rev.Laws Nev. 1912, § 5006; Ore.Code 1930, § 1-315; Rem.Comp.Stat.Wash. 1922, §§ 202, 203.
[18] Credits Commutation Co. v. United States, 177 U.S. 311, 315, 20 S.Ct. 636, 44 L.Ed. 782; Rodman v. Richfield Oil Co. of California (C.C.A. 9) 66 F.(2d) 244, 251; Richfield Oil Co. v. Western Machinery Co. (C.C.A. 9) 279 F. 852, 855, certiorari denied 260 U.S. 723, 43 S.Ct. 13, 67 L.Ed. 481; Farmers' & Merchants' Bank v. Arizona M. S. & L. Ass'n (C.C. A. 9) 220 F. 1, 7, certiorari denied 238 U. S. 628, 35 S.Ct. 791, 59 L.Ed. 1496; United States v. Northwestern Development Co. (C.C.A. 9) 203 F. 960, 962, 122 C.C.A. 262; United States v. Radice (C. C.A. 2) 40 F.(2d) 445; Central Trust Co. v. Chicago, R. I. & P. R. Co. (C.C.A. 2) 218 F. 336, 339, 134 C.C.A. 144; Ætna Casualty & Surety Co. v. American Surety Co. (C.C.A. 4) 64 F.(2d) 577, 582; United States Casualty Co. v. Taylor (C. C.A. 4) 64 F.(2d) 521, 526, certiorari denied 290 U.S. 639, 54 S.Ct. 56, 78 L.Ed. 555; Radford Iron Co. v. Appalachian Electric Power Co. (C.C.A. 4) 62 F.(2d) 940, 942, certiorari denied 289 U.S. 748, 53 S.Ct. 691, 77 L.Ed. 1494; Bankers' Trust Co. v. Virginia Ry. & Power Co. (C.C.A. 4) 273 F. 999, 1002, certiorari denied 257 U.S. 649, 42 S.Ct. 53, 66 L.Ed. 416; Burrow v. Citizens' State Bank (C. C.A. 5) 74 F.(2d) 929, 930; See, also, Vicksburg, S. & P. Ry. Co. v. Schaff (C. C.A. 5) 5 F.(2d) 610, 611; Rheinberger v. Security Life Ins. Co. (C.C.A. 7) 72 F.(2d) 147, 148; United States v. Carter (C.C.A. 7) 192 F. 311, 313, 112 C.C.A. 569; United States Trust Co. v. Chicago Terminal T. R. Co. (C.C.A. 7) 188 F. 292, 296, 110 C.C.A. 270; In re Columbia Real Estate Co. (C.C.A. 7) 112 F. 643, 646, 50 C.C.A. 406; Slupsky v. Westinghouse Electric & Mfg. Co. (C.C.A. 8) 78 F.(2d) 13, 15; Whittaker v. Brictson Mfg. Co. (C.C.A. 8) 43 F.(2d) 485, 489; Palmer v. Bankers' Trust Co. (C.C.A. 8) 12 F.(2d) 747, 752; McKee v. Brazell (C.C.A. 8) 284 F. 554, 555; Swift v. Black Panther Oil & Gas Co. (C.C.A. 8) 244 F. 20, 30; Glass v. Woodman (C.C.A. 8) 223 F. 621, 622; Western Union Telegraph Co. v. United States & M. T. Co. (C.C.A. 8) 221 F. 545, 552, 137 C.C.A. 113; Illinois Steel Co. v. Ramsey (C.C. A. 8) 176 F. 853, 863; United States v. Philips (C.C.A. 8) 107 F. 824, 46 C.C.A. 660; Minot v. Mastin (C.C.A. 8) 95 F. 734, 739; Jenkins Petroleum Process Co. v. Credit Alliance Corp. (C.C.A. 10) 83 F.(2d) 532, 536; Board of Com'rs v. Bernardin (C.C.A. 10) 74 F.(2d) 809, 816, certiorari denied 295 U.S. 731, 55 S.Ct. 645, 79 L.Ed. 1680; Demulso Corporation v. Tretolite Co. (C.C.A. 10) 74 F.(2d) 805, 807; Gaines v. Clark, 51 App.D.C. 71, 275 F. 1017, 1019.
[19] See cases under note 18; Connor v. Peugh's Lessee, 59 U.S. (18 How.) 394, 15 L.Ed. 432; Ex parte Cutting, 94 U.S. 14, 22, 24 L.Ed. 49; Ex parte Leaf Tobacco Board of Trade, 222 U.S. 578, 581, 32 S.Ct. 833, 56 L.Ed. 323; In re Engelhard & Sons Co., 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416; City of New York v. Consolidated Gas Co., 253 U.S. 219, 40 S.Ct. 511, 64 L.Ed. 870; New York City v. New York Tel. Co., 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673; United States v. California Canneries, 279 U.S. 553, 49 S.Ct. 423, 73 L.Ed. 838; O'Connell v. Pacific Gas & Electric Co. (C.C.A. 9) 19 F.(2d) 460; Merriam v. Bryan (C.C.A. 9) 36 F.(2d) 578; Baker v. Spokane Sav. Bank (C.C.A.) 71 F.(2d) 487.
[20] United States v. Northwestern Development Co. (C.C.A. 9) 203 F. 960, 962, 122 C.C.A. 262.
[21] Compare Whittaker v. Brictson Mfg. Co. (C.C.A. 8) 43 F.(2d) 485, 489, where it is said: "If the court has abused its discretion the appellate court may review its order."
[22] King v. Barr (C.C.A. 9) 262 F. 56, certiorari denied 253 U.S. 484, 40 S.Ct. 481, 64 L.Ed. 1025; Union Trust Co. v. Jones (C.C.A. 4) 16 F.(2d) 236, 239; Board of Drainage Com'rs v. Lafayette Bank (C.C.A. 4) 27 F.(2d) 286; State of North Carolina v. Southern Ry. Co. (C. C.A. 4) 30 F.(2d) 204, 209; Miller v. Pyrites Co. (C.C.A. 4) 71 F.(2d) 804, 807, certiorari denied 293 U.S. 604, 55 S.Ct. 121, 79 L.Ed. 696; Id., 293 U.S. 632, 55 S.Ct. 208, 79 L.Ed. 717; Stallings v. Conn (C.C.A. 5) 74 F.(2d) 189, 192; First Trust Co. v. Illinois Cent. R. Co. (C.C.A. 8) 252 F. 965; Mueller v. Adler (C.C.A. 8) 292 F. 138, certiorari denied 263 U.S. 721, 44 S.Ct. 230, 68 L.Ed. 524; In re Veach (C.C.A. 8) 4 F.(2d) 334; Whittaker v. Brieston Mfg. Co. (C.C.A. 8) 43 F. (2d) 485, 489.
[1] Meaning, of course, Sand Island, it being the only premises theretofore mentioned in the bill.
[2] The bill nowhere alleges that defendants claim to have any right, title or interest in or to these or any other premises.
[3] The bill nowhere alleges that plaintiff is the owner or entitled to the possession of any premises other than Sand Island.
[4] The bill nowhere alleges that defendants have used any premises other than Sand Island.