457 P.2d 616

DUMONT CORPORATION, a corporation, Plaintiff and Respondent,

v.

Mathew C. ARRINGTON and Geneve P. Arrington, Defendants and Appellants.

No. 11379.

Supreme Court of Utah.

July 28, 1969.

Richard L. Young, Salt Lake City, for appellants.

Alan D. Frandsen, Salt Lake City, for respondent.

ELLETT, Justice.

Defendants and one George Edward Peacock as joint tenants are purchasers under a uniform real estate contract of a house and lot situated in Salt Lake County, Utah. The plaintiff is the assignee of the vendor of that property. By its complaint the plaintiff seeks to treat the contract as a mortgage and to foreclose the interest of the defendants in and to the realty. Mr. Peacock is not made a party to the suit.

The defendants filed a verified answer and counterclaim. Thereafter the plaintiff filed an affidavit of its credit manager wherein it was stated that there was due and owing from the defendants to the plaintiff the sum of $13,503.41, and in connection therewith plaintiff filed a motion for summary judgment. The trial court granted the motion but reserved a trial as to the amount due if the parties could not agree upon the amount. This appeal is from the ruling of the trial court.

■ In their answer the defendants generally denied that there was due and owing the sum of $13,503.41, but since this is but a negative pregnant, it does not make an issue as to the amount due.

The second affirmative defense of the defendants alleges that the plaintiff was fully paid its equity in the property by June 1, 1967, and should have conveyed title to the defendants at that time. In the coun-

terclaim the mathematics of the claim was elaborated upon as follows:

Defendants claim to have made payments regularly from April 12, 1965, through

| | |
|---|---|
| Total price to be paid | $17,350 |
| Down payment | 4,864 |
| Balance due as of January 20, 1965 | $12,486 |
| Less mortgage outstanding January 20, 1965 | 12,200 |
| Equity of plaintiff's assignor as of January 20, 1965 | $ 286 |

----◆----

May 11, 1967, in an amount of more than $2650.[1]

From the above the defendants conclude and allege "and sometime prior to June 1, 1967, defendants' monthly payments on said contract must necessarily have reduced the contract balance to the amount of said mortgage. * * *"

The fallacy of the argument lies in the assumption that the balance due under the mortgage would be the same on June 1, 1967, as it was on January 20, 1965. In addition thereto, the balance due on the contract would be increased by interest at 6½ per cent from January 20, 1965, to April 11, 1965, in an amount of approximately $180, making the total sum due as of April 11, 1965, $12,666. Furthermore, the 26 payments from April 11, 1965, to and including May 12, 1967, if made, would not all be applied to reduce the principal balance of the contract. The monthly payments required by the contract of $101.91 included $17.50 for taxes and insurance, and the interest on the balance at 6½ per cent would amount to $68.20 per month.[2] Thus $85.70 of the $101.91 would not apply to the principal at all and would allow approximately $16 per month to apply to the principal, and in 26 months this would be roughly $416.

■ The plaintiff did not by its affidavit or otherwise deny that its interest was less than the balance due on the mortgage. However, in view of the mathematics set out by the defendants, it appears that there is an issue of fact as to that matter; and even if there were no disputed issue of fact on the matter, the court not not render a summary judgment in favor of the plaintiff.

■ The defendants both by answer and by motion raised the question of lack of an

1. Monthly payments of $101.91 were required, and the 26 payments would amount to $2,649.66.

2. This interest would be diminished each month by some eight or ten cents.

indispensable party defendant. This motion as yet has not been ruled upon. Mr. Peacock by the terms of the contract was a joint tenant with the defendants. The res is within the jurisdiction of the court and, therefore, the interest of Mr. Peacock can be determined in this matter by the court, if not by personal service upon him, then certainly by substituted service so as to cut off his interest in the property if any he has. To determine if a party is indispensable, the judge should ask himself the following four questions. If "No" is required as an answer to any one of the four questions, then the party is indispensable and must be joined.

1. Is the interest of the absent party distinct and severable?

2. In the absence of such party, can the court render justice between the parties before it?

3. Will the decree made in the absence of such party have no injurious effect on his interest in the matter? ("No" equals "Yes, it will have.")

4. Will the final determination in the absence of such a party be consistent with equity and good conscience?[3]

It is necessary to have all rights of the purchasers terminated in order to do justice to the defendants named herein. The real estate contract is being treated as a mortgage under foreclosure proceedings. There may be a deficiency judgment against the defendants for the difference between the sum of money owing on the contract and the amount received by the sheriff on sale of the property, and the sale will naturally be for less money if a clear title cannot be given to the purchaser.

It would, therefore, seem that "Yes" can be answered only to question No. 3 above and that "No" would be required to questions 1, 2, and 4. Thus Peacock is an indispensable party to this action, which is another reason why the summary judgment cannot be sustained.

The judgment is reversed and the case remanded to the district court with directions to proceed with this case in a manner not inconsistent with this opinion. The appellant is awarded costs.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

I respectfully dissent. The main opinion shies away from the platitude used sometimes by appellate courts that the trial court was in a more "advantaged" position to observe the tint of Mrs. Kalibash's hair. At any rate I unsubscribe to the implication that an interrogatory answered "Yes"

---

3. State of Washington v. United States, 9 Cir., 87 F.2d 421; Choctaw & Chickasaw Nations v. Seitz, et al., 10 Cir., 193 F.2d 456; Shields v. Barrow, 17 Howard (58 U.S.) 130, 15 L.Ed. 158.

means "No,"—and versa vice. The suggestion that this case should be reversed because of a negative pregnant seems pregnantly negative and unconceptional. The trial court having seen the color of Mrs. Kalibash's hair, should be affirmed.