**SCHMIDT et al. v. UNITED STATES.**
No. 8893.

Circuit Court of Appeals, Ninth Circuit.
March 17, 1939.

As Amended on Denial of Rehearing
April 27, 1939.

Thomas Boylan, of Philadelphia, Pa., Robert L. Edmiston, of Spokane, Wash., and Raymond M. Hudson, Minor Hudson, and Geoffrey Creyke, Jr., all of Washington, D. C., for appellants.

L. B. da Ponte and D. R. Frost, both of St. Paul, Minn., and F. J. McKevitt, of Spokane, Wash., for appellees Northern Pac. Ry. Co., Northern Pac. R. Co., and Northwestern Imp. Co.

White & Case, of New York City, for appellee Bankers Trust Co.

Taylor, Blanc, Capron & Marsh, of New York City, for appellee City Bank Farmers Trust Co.

Walter L. Pope, and E. E. Danly, Sp. Assts. to Atty. Gen., for the United States.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

On July 31, 1930, the United States brought an action in the United States District Court for the Eastern District of Washington against the Northern Pacific Railroad Company, a federal corporation, the Northern Pacific Railroad Company as reorganized in 1875, a de facto corporation, and Northern Pacific Railway Company, organized under the laws of Wisconsin, and certain other defendants, to quiet title to 2,900,000 acres of land, and for other purposes. In bringing the action on behalf of the United States the Attorney General acted under and in pursuance of a special act of Congress enacted June 25, 1929, 46 Stat. 41, 43 U.S.C.A. §§ 921–929. The general purpose of the action was to determine what proportion, if any, of the lands granted to the Northern Pacific Railroad Company by the act of July 2, 1864, 13 Stat. 365, and the resolution of May 31, 1870, 16 Stat. 378, had been forfeited to the United States by reason of the acts of the defendants in violation of the granting acts, and to determine the amount of compensation, if any, which should be paid to the owners of the lands thus granted for those lands within the Forest Reserves and National Parks specified in the act of 1929, supra, which had not been forfeited, the title to which was appropriated by the United States under the terms of the act.

The defendant Northern Pacific Railroad Company, which was organized under the act of July 2, 1864, was the original grantee. The defendant Northern Pacific Railroad Company, as reorganized in 1875, a de facto corporation, claimed to have acquired all the rights as well as the corporate franchise of the original grantee. The Northern Pacific Railway Company claims to be the successor in interest to all the property and rights of the original Northern Pacific Railroad Company and of the reorganized Northern Pacific Railroad Company. We will refer hereinafter to the Northern Pacific Railroad Company as the Railroad Company, and to the Northern Pacific Railroad Company reorganized as the Railroad Company reorganized, and to the Northern Pacific Railway Company, a Wisconsin corporation, as the Railway Company, and to all three as the Companies.

A purported foreclosure and sale of the property of the Railroad Company to a group of bondholders and stockholders of the Railroad Company, purporting to be a reorganization of that company had occurred in 1875, and in 1896 foreclosure of three mortgages was had and a sale of the properties of the Railroad Company as reorganized in 1875 was made to the Railway Company. The foreclosure and sale of 1896 was in connection with and incidental to a plan and agreement of reorganization whereby the stock and bonds of the Railroad Company were to be acquired by the Railway Company in exchange for its own stock and bonds, and then to be used in satisfaction of the foreclosure sale purchase price. The United States was not a party to the foreclosure proceeding.

In pursuance of the recommendation of President Coolidge to Congress a Joint Congressional Committee was appointed under a joint resolution, 43 Stat. 461, to investigate the rights of the government with relation to the lands granted by Congress in 1864 and 1870 to the Northern Pacific Railroad Company, or claimed by it or its successors under such grants. The Committee held extensive hearings and Congress required an opinion of the Attor-

ney General as to the appropriate legal or legislative action to be taken, 44 Stat. 1405. The Joint Committee made a report to Congress in 13 volumes, containing about 5500 printed pages. The act of June 25, 1929, supra, which resulted, refers to the hearings as hereinafter noted.

The complaint was amended on June 25, 1931. The complaint challenged the good faith and the validity of the foreclosure of 1875 and 1896 as affected by the act of 1864 and the resolution of 1870 but nevertheless alleged that the Railway Company had succeeded to all the rights of the Railroad Company, and the 1875 reorganized Railroad Company. The Railway Company answered the amended complaint on July 18, 1931. The Railroad Company on January 18, 1932 filed a disclaimer which the government moved to strike out and the Railroad Company thereafter, by its answer, adopted the answer of the Railway Company. By its answer, the Railway Company asserted its ownership of the land grants as successor to the Railroad Company and set up the special defenses of laches, equitable estoppel, res adjudicata, and the statute of limitations. These special defenses of the Railway Company were referred to a Special Master by order of February 25, 1932, and on May 25, 1932, on motion of the Railroad Company the defenses in point of law arising upon the face of the bill and the special defenses above referred to were referred to the Special Master.

The Special Master made his first report (237 pages in the transcript) on the above mentioned issues on May 31, 1933. Exceptions were filed by the parties and after hearing the report was adopted by the court on October 3, 1935. This order was amended January 29, 1936, so as to reserve to the defendant Bankers Trust Company and to the defendant City Bank Farmers Trust Company their defense that they were innocent purchasers for value.

Thereafter, on April 21, 1936, the case was referred back to the Master with directions to proceed with the hearing of the cause. By this order the Special Master was directed to take evidence on all the issues in the case not covered by the above mentioned report of May 31, 1933, except evidence as to the values of the lands in controversy and the amount of compensation due plaintiff or any of the defendants, and to report such evidence with his findings of fact and conclusions of law with a recommendation of the form of the decree to be rendered. The order provided that after such report had been heard and determined by the court and a decree rendered thereon, if no appeal was taken from the decree so entered the Special Master was to proceed with the final hearing of the case and to make complete findings of fact and conclusions of law on the entire case subject to review by the trial court.

After this order of April 21, 1936 was made, Congress took notice of the progress of the case and by statute enacted May 22, 1936, 49 Stat. 1369, 43 U.S.C.A. § 925 note, gave a right of appeal direct to the Supreme Court from the order contemplated in said order of reference, and also from the order of October 3, 1935, as amended January 29, 1936, approving the first report of the Special Master. Said appeals were to be taken within sixty days "from the date of the order or decree of the district court entered upon a review of the report of the Master to be made pursuant to the order of April 21, 1936".

On July 26, 1937, the Special Master made the report contemplated by the order of April 21, 1936, which covers about 200 pages of the transcript herein. Exceptions of the Railroad Company and of the Railway Company and of the Northwestern Improvement Company were filed August 9, and 11, 1937, and exceptions were filed by the United States on August 13, 1937.

On August 25, 1937, the appellants, alleging themselves to be minority stockholders of the Railroad Company, filed, without leave of court to intervene, a motion for an extension of time to file exceptions to the Special Master's report. On September 3, 1937, appellants, also without leave of court, filed what purports to be an answer and cross complaint of the "Northern Pacific Railroad Company by Charles E. Schmidt, and other minority stockholders of said Railroad Company." On September 13, 1937, the plaintiff gave notice of a motion to strike said pleading on the ground that it was filed without leave of court and in violation of rule 21 of the District Court, and also upon the ground that it did not state a cause of action against the United States. This was followed on September 15, 1937, by notice of a similar motion by the defendants Railroad and Railway Companies and by the

Northwestern Improvement Company. This was followed January 31, 1938, by a notice of motion for leave to file an intervening petition, a copy of which was served with the notice of motion. It is verified January 20, 1938. The petition was accompanied by proposed interrogatories. The same party filed on February 19, 1938, a motion to construe, modify and amend the report of the Special Master filed July 26, 1937, accompanied by exceptions to that report. On March 9, 1938, the court struck out the answer and cross complaint; denied the application for leave to intervene; denied the motion to construe, modify and amend the report of the Special Master of July 26, 1937; struck out the said exceptions to the report, struck out the motion for an extension of time to file the exceptions to said report, struck out a document entitled "Joinder of the Northern Pacific Railroad Company, by Charles E. Schmidt, and others, Minority Stockholders, and of·said ₒCharles E. Schmidt and others, minority stockholders, petitioners in the two motions filed, to refer the report to the Special Master", all being documents filed by appellants. The order stated that it was without prejudice to the rights of the minority stockholders of the Northern Pacific Railroad Company to assert in any other proceedings any of the claims advanced in their answer, cross bill, and petition in intervention. Notice was given March 11, 1938, by the proposed interveners, of an application to amend the order of March 9, 1938, and to amend their proposed cross bill and answer which had been stricken out, by incorporating therein all the allegations of the proposed petition in intervention, to be heard March 14, 1938. On March 17, 1938 the same parties filed a document entitled a motion "to dismiss the original and amended bill of complaint heretofore filed in this cause". These motions were denied March 22, 1938, without prejudice to the rights of. the petitioners to assert later in the cause any rights they might have to any fund to be distributed by the United States. On the same day (March 22, 1938) the district court ruled on the exceptions to the report of the Special Master filed July 26, 1937, and directed the parties to present their proposed findings of fact and conclusions of law, in order that such findings, conclusions and decree could be entered preparatory to the appeal therefrom, if any, authorized by the act of Congress of May 22, 1936, supra.

Thereupon (March 22, 1938) the minority stockholders filed assignments of error on behalf of the Railroad Company and themselves directed to the entire.proceeding, including the order of March 9, 1938, and the order of March 22, 1938, denying the application to rehear the order of March 9, 1938. On March 25, 1938, the minority stockholders filed an additional assignment of error.

On July 5, 1938, Judge Wilbur of this court, allowed an appeal from the order of the trial court of March 9, 1938, denying the application to intervene but denied the application as to all other orders embraced in the order of March 9, 1938.

On the presentation of this matter by brief and argument, the appellants insist that the order allowing the appeal could not be confined to one of the orders contained in the order of March 9, 1938, but must extend to the entire order in all its features. It is sufficient to say that we do not agree with this position. The only order of March 9, 1938, appealable to this court, if any, was the order denying leave to intervene, which appellant contends was a final order and for that reason appealable to this coᵤrt.

Our jurisdiction of the appeal is challenged by the appellees. Appellees contend that if the order is appealable at all, which they deny, the appeal must be taken to the Supreme Court. The act of June 25, 1929, provided that appeals from final decrees in the suits brought by the·Attorney General thereunder should be taken to the United States Circuit Court of Appeals of the circuit wherein the District Court which entertained the suit was located. The act of May 22, 1936, provided that the right of appeal .from final orders as fixed by the act of 1929 should remain in effect.

If the order denying the right to intervene is appealable at all it is because it is a final decree as to the interveners. Consequently, the appeal, if any, is to be taken to this court as provided by the act of 1929, supra, and recognized by the act of 1936, supra.

In considering whether or not the order denying appellants' application to intervene is a final order it is essential to state many of the facts which also go to the merits of the appeal. The appellánts' position may be summarized as follows:

The denial of the right to intervene in the action is a final determination of some of the rights which the appellants seek to assert on behalf of the Railroad Company, because such rights can only be asserted in an action against the United States. The United States has not granted the appellants a right to sue but, by its affirmative action, has given the opportunity to contest the claims of the government to complete or partial forfeiture of the land grants of 1864 and 1870 to the Northern Pacific Railroad Company.

It is claimed that the denial of the right to intervene is a final determination from which an appeal may be taken, for the statute of 1929 requires the court to determine the questions which the interveners by their petition seek to have determined and, therefore, they have a right to intervene in order to secure an adjudication of these questions which they claim have not been presented by the parties to the action.

The appellants, by their petition in intervention, challenged the validity of the foreclosure of the Railroad Company's property in 1875, challenged the validity of the reorganization plan of 1896, of the foreclosure of 1896, and of the mortgages therein foreclosed. They sought a decree from the court that the land grants made to the Railroad Company by the act of 1864, and the resolution of 1870, were deficient to the extent and at the times alleged in their answer and cross bill as well as in the answer of the Railway Company; that the title to such lands be vested in the Railroad Company, and asked the court to find the compensation due the Railroad Company. They asked the court to decree

that no title passed from the Railroad Company to the Railway Company by the foreclosure proceedings and reorganization proceedings of 1875 and 1896; that any so-called title, deed, patent or claim in and to any of such lands that may have passed to the Railway Company or any other company or individual except homestead exemptors passed illegally and unlawfully in violation of the statute of 1864 and were void; that all patents issued by the United States for the lands granted under the act of 1864 and the resolution of 1870 to any other individual or company except the Railroad Company, were void, and that the United States be required to issue a new patent covering such lands to the Railroad Company; that the bonds of the Railroad Company issued in 1870 were still unsatisfied and unpaid and were the only liens against the property; that the Railroad Company be released from the "captivity" of the Railway Company and that the common stock of the Railroad Company in possession of the Railway Company be declared a trust for owners of securities issued by the Railway Company since July 1, 1896. The appellants, in the event the court should deny the relief above prayed for, sought a judgment against the Railway Company in favor of the non-assenting stockholders of the 1896 reorganization of $3,255,900, par value of their Railroad Company stock, plus the dividends declared on the same since July 1, 1896.

The claim of the right to intervene and to inject these questions into the litigation is based upon the provisions of Sec. 5 of the act of June 25, 1929, 43 U.S.C.A. § 925.[1]

[1] "Sec. 5. [§ 925.] The Attorney General is hereby authorized and directed forthwith to institute and prosecute such suit, or suits, as may, in his judgment, be required to remove the cloud cast upon the title to lands belonging to the United States as a result of the claim of said companies, and to have all said controversies and disputes respecting the operation and effect of said grants, and actions taken under them, judicially determined, and a full accounting had between the United States and said companies, and a determination made of the extent, if any, to which the said companies, or either of them, may be entitled to have patented to them additional lands of the United States in satisfaction of said grants, and as to whether either of the said companies is lawfully entitled to all or any part of the lands within the indemnity limits for which patents have not issued, and the extent to which the United States may be entitled to recover lands wrongfully patented or certified. In the judicial proceedings contemplated by this act [chapter] there shall be presented, and the court or courts shall consider, make findings relating to, and determine to what extent the terms, conditions, and covenants, expressed or implied, in said granting Acts have been performed by the United States, and by the Northern Pacific Railroad Company, or its successors, including the legal effect of the foreclosure of any and all mortgages which said Northern Pacific Railroad Company claims to have placed on said granted lands by virtue of authority conferred in the said resolution of May 31, 1870, and the extent to which said proceedings and foreclosures meet

Appellants claim that the validity of the reorganization and foreclosure of 1896, as well as the reorganization in 1875, were questions presented to the Joint Congressional Committee which were not presented to the court, and that the act expressly authorizes "any other proper person" to present such questions to the court for its determination.

In support of this contention the appellants have asked us to take judicial notice of the report of the proceedings of the Joint Congressional Committee. They have made references therein to statements concerning the validity of the foreclosures of 1875 and 1896 and the corresponding reorganizations of those years, and the contention raised before the Joint Committee by the attorney representing the · Forest Service of the Department of Agriculture that only one mortgage was authorized by the resolution of May 31, 1870, and all the other mortgages were invalid, and upon this basis the appellants claim that these questions of law and fact were presented to the Joint Congressional Committee and that in consequence the act expressly authorizes and requires such questions to be determined by the court. It is therefore urged that the court should have granted their petition to intervene.

In considering this question it should be observed that the whole complaint in intervention presents three aspects of the problem: one, an assertion of the rights of the Railroad Company against the Railway Company based upon the claim that· the Railroad Company is still the owner of the railroad and land grants, that the foreclosures are void, and that most of the mortgages upon which these foreclosures are based were invalid; second, in the alternative, that the appellants are entitled to judgment against the Railway Company

for the value of their stock and dividends thereon; third, that the Railroad Company, as against the United States, is entitled to have any conveyances or forfeitures based upon the mortgages and foreclosures ignored because void and to have recompense for the lands patented by the government to the Railway Company. Some of these claims, it will be observed, will be germane to the litigation instituted by the Attorney General on behalf of the United States, while others only relate to the controversy between the majority and minority stockholders of the Railroad Company. It is alleged that the Railway Company owns substantially all the stock of the Railroad Company except that owned or represented by the appellants.

 It is clear from an examination of the petition that in so far as appellants seek to present matters presented by the Railway Company and the Railroad Company, there is no merit in the petition for there is no showing that such issues were not adequately presented by the Railway Company or Railroad Company. Moreover, the application was too late.

The issues the appellants were primarily concerned in bringing before the court were the ones relating to the validity of the foreclosures and reorganizations of 1875 and 1896, in so far as the claimed invalidity of these proceedings effected the rights of the companies and the stockholders therein as between themselves. It is stated in the petition: "One of the principal bases of this petition is to restore to the said railroad company all its rights, privileges, franchises, properties, money and assets, free and clear of all encumbrances, interference or management of and by the said Northern Pacific Railway Company * * *."

---

the requirements of said resolution with respect to the disposition of said granted lands, and relative to what lands, if any, have been wrongfully or erroneously patented or certified to said companies, or either of them, as the result of fraud, mistake of law or fact, or through legislative or administrative misapprehension as to the proper construction of said grants or Acts supplemental or relating thereto, or otherwise, and the United States and the Northern Pacific Railroad Company, or the Northern Pacific Railroad Company, or any other proper person, shall be entitled to have heard and determined by the court all questions of

law and fact, and all other claims and matters which may be germane to a full and complete adjudication of the respective rights of the United States and said companies, or their successors in interest under said Act of July 2, 1864, and said joint resolution of May 31, 1870, and in other Acts or resolutions supplemental thereto, and all other questions of law and fact presented to the joint congressional committee appointed under authority of the joint resolution of Congress of June 5, 1924 (Forty-third Statutes, page 461), notwithstanding that such matters may not be specifically mentioned in this enactment [chapter]."

Assuming for the moment that the act of June 25, 1929, supra, was sufficiently broad in its terms to authorize a decision on the issues presented by the petition in intervention relating to the controversy between the majority and minority stockholders of the Railroad Company, and to confer jurisdiction upon the trial court to try such issues, it does not follow that the denial of the application for the petition was erroneous. Congress, in its enactment, understood that courts only try issues framed by the parties. It authorized and directed the Attorney General on behalf of the United States to prosecute such an action on behalf of the government. It is perfectly clear that the purpose of Congress by this authorization was to have determined the rights of the Railway Company and its successors in the public lands covered by the land grants in the acts of 1864, supra, and 1870, supra. In the nature of things it was contemplated that the Attorney General, representing the United States, should make such claims as would be to the best interests of the United States. Throughout the act Congress refers to the Northern Pacific Railway Company as the successor to the Northern Pacific Railroad Company.

The Attorney General repeatedly challenged the validity and effect of the reorganizations and foreclosures of 1875 and 1896, so far as such matters affected the rights of the United States. But he alleged that the Railway Company was the successor of the Railroad Company. The Railroad Company and the Railway Company, by their answers, admit this allegation. The trial court, in pursuance of these pleadings must necessarily determine that the Railway Company is the successor of the Railroad Company. Such a decree would be a determination of the validity of the foreclosure and reorganization, in so far as it involves a transfer of ownership to the Railway Company. Appellants' proposition implies that there must be adverse allegations of fact and the determination of the court upon such controverted issues in order to comply with the statute which directs that the validity and effect of these foreclosures shall be determined in the action. This position is not tenable. By this act it has vested broad jurisdiction in certain district courts with reference to the claims of the United States. It does not follow that all such jurisdiction should be exercised in a single suit or at all. Nor is the structure of the act consistent with the idea that it was the intention of Congress to vest jurisdiction over all sorts of disputes between the defendants in the litigation because some reference or allusion thereto is contained in the proceedings before the committee of Congress. The terms and effect of the act of Congress of June 25, 1929, and the cardinal purpose of the act, must be kept in mind, and also the limitation of the power of Congress over the federal courts.

In this connection it is urged that it is the duty of the Attorney General to raise all the issues suggested in the statute of June 25, 1929, but, as we have stated, this is not a correct interpretation of the statute and, if it were, the question of whether or not the Attorney General has performed his duty cannot be raised in this action.

We conclude that the lower court was not required to make decision or finding upon any question not presented to it by the parties to the action.

In considering whether the court rightly denied appellants' leave to intervene, it is necessary also to consider the status of the case at the time of the application for leave to intervene. As already pointed out, the action had been pending for over seven years before the appellants filed their answer and cross-complaint. During that period the Special Master had made two reports which have been modified or confirmed by the trial court. These reports covered most of the issues of law and fact involved in the action. In these reports many of the questions that appellants seek to have redetermined have already been passed upon. The appellants, in so far as they sought to represent the Railroad Company and change the nature and character of its defense of the government's action, in effect sought to overthrow much that had been done up to that point in the litigation.

The position of the Railroad Company and the Railway Company, as to the transfer of ownership, has been evidenced throughout the whole period since 1896. The Railway Company is a majority stockholder of the Railroad Company, and has elected the directors of the Railroad Company and to that extent has controlled its action for over forty years.

The appellants account for their delay in presenting their petition for leave to intervene on the ground that they assumed that all the issues stated in the act of June 25, 1929, would be presented and tried in

596

the case, but that when they ascertained that all these issues had not been passed upon and the court was moving toward a final decree without such determination of all these issues, they sought to intervene. This contention is inconsistent with the claim that the minority stockholders of the Railroad Company had been exercising the greatest possible diligence since 1875, and particularly since 1896, to establish their rights and that the act of June 25, 1929, resulted largely from their persistence, and that the clause in Sec. 5, above quoted, upon which they now rely as the basis for their right to intervene was proposed by their representative and incorporated in the act at their instance and request. Having, as they claim, so far succeeded in their efforts they then remained dormant for nearly seven years after the Attorney General had filed a complaint in this action in which it was alleged that the Railway Company was the successor in interest to the Railroad Company which allegation was admitted by both companies. The admission by the Railroad Company was made more than five years before the appellants attempted to intervene.

The application of the appellants for leave to intervene on behalf of the Railroad Company is based upon the claims that the Railroad Company is not properly defending its rights as against the United States and as against its codefendant, the Railway Company, in the litigation and, therefore, the minority stockholder should be permitted to take charge of the litigation on behalf of the Railroad Company.

As to the former claim, that is, that appellants should be permitted to assert the rights of the Railroad Company against the United States, the leave to intervene is a final decree because the stockholders of the Railroad Company will be bound by the decree against the Railroad Company, hence, it is appealable. See, State of Washington v. United States, 9 Cir., 87 F.2d 421.

As to the latter, we hold that the act of June 25, 1929, did not contemplate or authorize the litigation of claims between the stockholders of the defendant corporations in the suit brought by the Attorney General on behalf of the United States and, consequently, that appellants had no right to intervene in the action, and the order denying leave to so intervene was correct.

If, however, it should be held that the act of June 25, 1929, did authorize the litigation of claims between the majority and minority stockholders of the Railroad Company in the action so instituted, it is clear, and we hold, that the application of appellants to intervene was properly denied because it was made too late in the progress of the litigation to justify the reopening of questions already decided in the case.

Motion to dismiss the appeal is denied.

The order of March 9, 1938, denying appellants' application for leave to intervene, is affirmed.